**Horace LEE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19939.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 23, 1966.

Decided Oct. 20, 1966.

Mr. James V. Siena, Washington, D. C. (appointed by this court), with whom Mr. James vanR. Springer, Washington, D. C., was on the brief, for appellant.

Mr. Charles A. Mays, Asst. U. S. Atty., for appellee. Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker, Asst.

U. S. Atty., and Dean W. Determan, Asst. U. S. Atty., at the time the brief was filed, were on the brief for appellee.

Before EDGERTON, Senior Circuit Judge, and WRIGHT and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

In respect of events allegedly occurring in 1962, appellant was indicted on June 24, 1963. The indictment contained nine counts founded upon three alleged sales of narcotics by appellant to, or in the presence of, an undercover police officer. A trial of that indictment in February of 1964 resulted in a directed verdict of acquittal as to the first three counts, and conviction on the remaining six. We reversed that conviction and remanded with instructions that a hearing be held on the reasonableness of the delay between offense and arrest, and the prejudice to appellant attributable to such delay.[1] In the course of that hearing, the District Court dismissed the second three counts because the Government had, in its view, unreasonably delayed informing appellant of this charge even after he had been arrested on the other two. The District Court also concluded that the delay was not unreasonable in the light of the public interest in efficient police methods of detecting crime, and that, in any event, no showing of intolerable prejudice was made. A second trial on the last three counts of the indictment resulted in a jury verdict of guilty on one count, and acquittal on the other two.

This conviction is attacked here because of two asserted errors occurring in the course of the trial, and also because of the allegedly erroneous determinations of the judge at the remand hearing. Since we find reversal necessitated by the former, we address ourselves principally to these two points.[2]

---

1. Lee v. United States, No. 18,501 (order entered April 14, 1965).

2. The conclusion upon remand that the delay was justified by the necessities of

good police administration seems very dubious indeed. The testimony followed the familiar pattern that delays, as here, of as much as 5½ months are necessary because there are no other ways of doing

## I

The transaction for which appellant was convicted occurred on October 15, 1962. The transaction for which he was acquitted at his first trial allegedly happened on September 27, 1962. The transaction giving rise to the counts of the indictment dismissed at the remand hearing was said to have taken place on September 26, 1962. Appellant had at all times denied his guilt of any of them.

On direct examination appellant generally denied any association with the narcotics trade. During his cross-examination, he was asked specifically whether he had engaged in the September 26 and 27 transactions, both of which assertedly occurred in the presence of the undercover agent and the other eyewitness who testified for the Government. Appellant answered that he had not been involved in those transactions, that he had not seen either of the prosecution eyewitnesses before his arrest, and further asserted that he had never been associated with the narcotics traffic. As a rebuttal witness offered by the Government, the undercover police-

man was permitted, over objection, to testify about the September 26 and 27 transactions. The justification advanced by the prosecution was that it was entitled to impeach appellant's credibility; and the judge instructed the jury that the testimony should be considered by it for this purpose alone.

 This ruling by the court stands strangely at odds with the court's initial reaction ("But he never admitted it at all to anybody.") to the prosecutor's contention that the testimony was admissible under Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), and Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960). Whatever the exact reach of those cases may be, they surely do not mean that one who has consistently denied any knowledge of a crime with which he has once been charged and who has been acquitted of it may, in a trial of a similar charge, be impeached by testimony of his participation in such crime simply because he has once again denied any knowledge of it.[3] It was the Govern-

---

these things. But the police testimony was that, in planning and managing these undercover operations, no account whatsoever was taken of a defendant's interest in being apprised quickly of what he is charged with having done. We will never know whether or not these operations can, with no serious impairment of the public interest, be differently arranged until their planning has at least taken this factor into account. We have heretofore recognized that some adverse impact upon this interest of the accused is inseparable from the undercover approach, and that a not inconsiderable period of delay may be justifiable in the balancing of public and private interests. Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965); Woody v. United States, —— U.S.App.D.C. ——, 370 F.2d 214 (decided August 11, 1966) (concurring opinion). But these expressions do not relieve either police or prosecutor from bringing a little imagination to bear upon the problem. The remand record shows none, although we recognize that this record relates to a period preceding the first manifestation of this court's concern with these narcotics delay cases.

The finding with respect to an absence of prejudice stands upon a stronger foot-

ing. Another witness testified to his presence at the alleged sale and identified appellant, and both he and the policeman testified to having seen appellant on other occasions. The identification here was thus, a considerable cry from Ross. Compare Woody v. United States, supra; Daniels v. United States, 123 U.S.App. D.C. 127, 357 F.2d 587, 590 (1966); Jackson v. United States, 122 U.S.App. D.C. 124, 351 F.2d 821 (1965).

3. In Walder, the accused denied ever having sold, possessed or handled narcotics. The court allowed the prosecution to introduce evidence that on a previous and unrelated occasion narcotics had been seized from his possession because this testimony squarely contradicted an affidavit he had filed in the earlier proceeding in connection with his motion to suppress evidence. 347 U.S. at 64, 74 S.Ct. at 354. In Tate, this court, citing Walder, allowed the impeachment of a defendant by means of certain prior inconsistent statements concerning his activities on the day of the alleged crime. In the course of its opinion, the court said: "What is proscribed by Walder is the freedom to 'resort to perjurious testimony' on the assumption that prior in-

ment here that chose to cross-examine appellant about the two transactions for which he was not on trial. His denials on the witness stand did not contradict anything he had previously said. He had, thus, provided no occasion for his own impeachment; and it could have been no other than highly prejudicial for the jury to hear the policeman's version of the September 26 and 27 incidents.

 Long before *Walder* and *Tate*, the rules of evidence observed in this jurisdiction, as elsewhere, did not countenance the impeachment of witnesses by otherwise inadmissible evidence directed to collateral issues.[4] The policies served by these rules (i. e., the prevention of confusion and surprise) have peculiar force where the attempt is to discredit by means of purported misconduct short of a conviction. And, these traditional policies aside, there is something inherently repugnant about adducing evidence of alleged crimes from which appellant has already been given judicial deliverance, and which appellant, in or out of court, has never failed to deny.

## II

 We also believe that appellant has established a violation of the Jencks Act, 18 U.S.C. § 3500. The drug specified in the indictment was identified at trial by a Government chemist as having been in a package received by him from Sergeant Brewer on October 18, 1962. Officer Moore—the undercover operative —testified that he had given this package (being the one assertedly purchased by him from appellant on October 15) to

Sergeant Brewer on October 17. Sergeant Brewer and his associate, Officer Fogle, testified that Officer Moore had delivered the package as he had said. On cross-examination it appeared that Brewer and Fogle had prepared at the time written reports of their dealings with Moore on October 17; and each said that, without consulting such reports, he could not say what the precise scope of those dealings was. In particular, neither could say whether other packages had been delivered as well. Defense counsel asked for production of these reports, but the Government was unable to respond because they had been destroyed. A motion to strike the testimony of Brewer and Fogle was then made, but was denied. This denial seems to us to have been contrary to the commands of the statute.[5]

There is no issue before us as to whether the reports in question were within the purview of the Act. The trial judge held that they were, and that is not challenged by the Government.[6] Neither is there any reason to think that the destruction of the reports occurred in bad faith or otherwise than in an ordinary course of business devoid of any conscious purpose to hamper the defense. But the Jencks Act does not embody in terms any "good faith" exception; and, focussing our attention on this record and no other, we think we should at least be slow to imply one in a case where the ability of the accused to defend has already been jeopardized by a deliberate delay between offense and arrest calculated to serve police purposes alone.

consistent statements would be kept from the jury." 109 U.S.App.D.C. at 18, 283 F.2d at 382. Clearly, those cases do not govern here. See also Smith v. United States, 114 U.S.App.D.C. 140, 312 F.2d 867 (1962); Lockley v. United States, 106 U.S.App.D.C. 163, 270 F.2d 915 (1959).

4. Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633 (1942), cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943). See 3 Wigmore, Evidence §§

1000–1003 (3d ed. 1940) and cases cited therein.

5. When production is not forthcoming, the statute provides that the court "shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared."

6. See Howard v. United States, 108 U.S. App.D.C. 38, 278 F.2d 872 (1960); Lewis v. United States, 340 F.2d 678 (8th Cir. 1965).

Those purposes may be conceived from the highest motivations, but they are not the accused's; and, because they inevitably impede in varying degree the latter's capacity to overcome the prosecution's identification of him, their indulgence only heightens the Government's obligation scrupulously to observe those legislative mandates which are concerned with his protection. The police cannot have it both ways, simultaneously seeking the privilege of delay and neglecting their responsibilities under the Jencks Act. If they are to be careless or casual in the keeping of records covered by that statute, the last place to do it is in a narcotics delay case.

We decide only that, in the context of this record, the motion to strike was well within both the letter and the spirit of the statutory direction, and should have been granted. We intimate no opinion with respect to the essentiality of the testimony in question to the Government's case. Whatever room there may be generally to treat a Jencks Act lapse as harmless error,[7] we are not disposed to do so in a narcotics delay case of the kind revealed by this record.

Reversed.

---

7. This case is clearly distinguishable from situations where failure to produce has been held to be harmless error. In those cases, the statements requested were drafts ultimately incorporated into documents which were produced for the defense. See Killian v. United States, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961); Alexander v. United States, 118 U.S.App.D.C. 406, 336 F.2d 910, cert. denied, 379 U.S. 935, 85 S.Ct. 336, 13 L. Ed.2d 346 (1964); United States v. Comulada, 340 F.2d 449 (2d Cir.), cert. denied, 380 U.S. 978, 85 S.Ct. 1343, 14 L.Ed.2d 272 (1965). The Government's allegation of good faith in its destruction of Jencks Act records has been regarded as non-determinative in at least one case. United States v. Lonardo, 350 F.2d 523 (6th Cir. 1965). See also Levin v. Katzenbach, 124 U.S.App.D.C. —, 363 F.2d 287 (1966); Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842 (4th Cir. 1964); United States v. Consolidated Laundries Corp., 291 F.2d 563 (2d Cir. 1961).