**UNITED STATES of America**

v.

**Bennie E. BARNES, Appellant.**

**No. 71–1507.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 11, 1972.

Decided June 29, 1972.

Rehearing Denied Aug. 15, 1972.

Fahy, Senior Circuit Judge, concurred and filed opinion.

Mr. Rufus King, Washington, D. C. (appointed by this court), for appellant.

Mr. Julius A. Johnson, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., at the time the brief was filed, and Robert A. Shuker, Asst. U. S. Atty., were on the brief, for appellee. Mr. Harold H. Titus, Jr., present U. S. Atty., also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, WILKEY, Circuit Judge, and RONALD N. DAVIES,* U. S. Senior District Judge for the District of North Dakota.

RONALD N. DAVIES, Senior District Judge:

The appellant here, Bennie E. Barnes (Barnes), was tried to a jury in United States District Court for the District of Columbia in January, 1971, on a three-count indictment charging (1) felony-

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

murder, (2) first degree murder, and (3) arson, all in violation of the District of Columbia Code. From judgment entered upon his convictions Barnes has perfected this timely appeal.

Barnes was the common law husband of Ella Mae Barnes (Mrs. Barnes), the murdered woman. On March 8, 1969, in late afternoon both were in the apartment of Dorothy Lee Blizzard, Mrs. Barines' niece, in 8th Street N.W., Washington. Harley Davis, a male friend of Mrs. Blizzard, together with Barnes and Mrs. Barnes, had been drinking and an argument ensued during which Barnes assaulted Mrs. Barnes when he sought to persuade her to return to their own home, which Mrs. Barnes declined to do. Davis induced Barnes to leave the premises. Sometime later Barnes returned to the Blizzard apartment, apologized to Harley Davis for his prior conduct, spoke a few words to Mrs. Barnes and left. Barnes returned to the same apartment early the next morning, Sunday, March 9th. At this point Mrs. Barnes was lying on a couch in the kitchen of the apartment with Wilhelmina Blizzard, her eight year old niece. The evidence discloses that Barnes, after some argument with Mrs. Barnes, removed a plastic bottle containing gasoline from his coat. Mrs. Barnes smelled the container and threatened to call the police. Barnes then poured its contents over the floor and threw a lighted match into the gasoline which instantly enveloped Mrs. Barnes in flames. Mrs. Barnes pushed her niece Wilhelmina out of the fire, but struggled with Barnes who sought to keep her in the flames. In this he was temporarily successful since Mrs. Barnes weighed some 250 pounds and moved with more than ordinary difficulty. Barnes then left the room. Mrs. Barnes cried for help and Harley Davis responded, throwing a blanket about himself and moving quickly into the inferno to drag Mrs. Barnes out of the flames. She was taken to Freedman's Hospital where she died at 7:50 p. m. the following day, having suffered second degree burns over some 80 per cent of her body.

Barnes bases his appeal on four grounds. The first is that testimony as to a confession obtained by interrogation of him prior to the so-called "Miranda" warning was erroneously received in evidence by the District Court. Miranda v. State of Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), sets out:

> "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers *after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.*" (Italics supplied.)

Sergeant Layfield of the Washington Metropolitan Police was cruising alone in his police vehicle when he responded to a radio call indicating trouble in Dorothy Blizzard's 8th Street apartment. As he approached the residence he was met by Dorothy Blizzard and appellant Barnes. Mrs. Blizzard commented to Sergeant Layfield that Barnes had set the fire, after which the officer quite naturally, it appears to us, asked of Barnes, "Is that true?" To which Barnes responded, "Well, I will take the blame for it." Sergeant Layfield then said, "I am not asking you to take the blame. I am asking you if you set the fire." Barnes replied, "Yes, I did, but it was an accident." Thereupon Sergeant Layfield placed Barnes under arrest.

█ It must be borne in mind that Officer Layfield knew nothing of what had happened in the Blizzard apartment. He was seeking to find out. It was Mrs. Blizzard, not Sergeant Layfield, who precipitated the investigatory question. At this point no one had been accused of any crime. It was only after

response to the Sergeant's quite proper and understandable question that Barnes admitted he had set the fire, albeit "by accident." This entire episode occurred sometime after 2:00 o'clock in the morning in a setting of rapidly developing events, Barnes was not in custody at the time he made the statement to Sergeant Layfield, was not a suspect, had not been arrested when he gave the incriminatory statement, and had not been "otherwise deprived of his freedom of action in any significant way." Miranda v. State of Arizona, *supra*.

Nothing contained in *Miranda* can give Barnes comfort. As is so often the case, *Miranda* has again either been misunderstood, misread or misconstrued.

It is to be noted also that the witness Dorothy Blizzard testified that she had told a metropolitan police officer that, "He was the one that did it," meaning the appellant Barnes, and as Officer Tropf was about to leave the vicinity of Mrs. Blizzard's apartment with Barnes, then under arrest, the severely burned Mrs. Barnes looked at Barnes and said, "You had no call to do that to me, Bennie." On the way to the police scout car Barnes said to Officer Tropf, "I am sorry I did it. What do you think they will do to me?" This, as the record discloses, was an entirely voluntary statement on Barnes' part since this police officer asked him no questions about the fire or Mrs. Barnes.

" * * * Finally, it is well settled that an unsolicited remark by a defendant, not in response to any interrogation, does not fall within the rule of Miranda v. Arizona * * *. The trial court correctly ruled that the witness' statement was admissible in evidence. United States v. Powers, 5 Cir. 1971, 444 F.2d 260." United States v. Trosper, 5th Cir., 450 F.2d 319, 320.

Harley Davis, moreover, testified that right at the scene he had asked Barnes, "What did you do that for, Bennie?" To which Barnes replied, "I am sorry. I was wrong."

Barnes' second cause for reversal is grounded upon alleged error in permitting Officer Robert Tropf, Jr. to testify when the officer admitted he had lost his original notes, and hence under Title 18, U.S.C. § 3500, the Jencks Act, he could not produce them in court, although he had them when Barnes was arraigned. Barnes cites to us Lee v. United States, 125 U.S.App.D.C. 126, 368 F.2d 834 (1966).

Initially we point out that Officer Tropf did not arrest Barnes. This was done by Sergeant Layfield. Officer Tropf merely assumed custody of him from Sergeant Layfield. The notes Officer Tropf had taken were in his possession at Barnes' arraignment nearly one and a half years before Barnes' trial, but Officer Tropf had orally reported to his superiors and to Officer Fuksa who had the primary responsibility to make written report. Moreover, *Lee* is not the last word in this circuit on this matter. United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642 (1971), authored by Judge J. Skelly Wright, discussing Supreme Court decisions regarding the due process requirements of disclosure, says:

"Although the Supreme Court has not yet attempted to define this standard with precision, it is the law in this circuit that the due process requirement applies to all evidence which 'might have led the jury to entertain a reasonable doubt about [defendants'] guilt,' and that this test is to be applied generously to the accused when there is 'substantial room for doubt' as to what effect disclosure might have had." P. 648, (Footnotes omitted.)

■ The officer's good faith loss of notes did not warrant the trial court striking his testimony. Unlike other cases cited to us, we do not in the case at bar face the problem of suppressing evidence, nor is there anything at all in the record to suggest anything but good faith loss.

"The Supreme Court had indicated twice before that at least under the Jencks Act the circumstances of destruction would be highly important. It had also made clear that good faith loss would not invoke the statutory sanctions * * *. Killian v. United States, 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961); Campbell v. United States, 365 U.S. 85, 98, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961)." United States v. Bryant, supra, p. 651, n. 19.

■ In Barnes' third ground for reversal his position is that the incriminatory statements of Mrs. Barnes did not qualify under the dying declaration exception to the hearsay rule. The first of these statements was made by Mrs. Barnes right outside the apartment house when Officer Tropf was escorting Barnes past her and she said to Barnes, "You had no call to do that to me, Bennie." Considering the setting in which this statement was made it is clear to us that Mrs. Barnes' statement was purely and simply a spontaneous, excited utterance and the second of the statements made in the hospital clearly qualifies as a dying declaration.

Both Barnes and the Government have cited Shepard v. United States, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933), and United States v. Kearney, 136 U.S.App. D.C. 328, 420 F.2d 170, in support of their respective positions on this issue. Barnes' reliance on these cases is misplaced since it is obvious that their teachings support the Government and not Barnes, in this situation.

■ Mrs. Barnes was interviewed in the intensive care unit of Freedmen's Hospital some seven hours after suffering the second and third degree body burns hereinbefore referred to. She was obviously in severe pain and spoke and breathed with great difficulty. She said at that time and place, "I am not going to make it . . . I feel like I am going to die because I am too much in pain." And she did die the next day as a direct result of the burns sustained. We hold this to be a dying declaration beyond peradventure of doubt.

■ Barnes' fourth and final argument for reversal is predicated on alleged error by the trial court in instructing the jury over Barnes' objection to consider the voluntariness of his statements. This argument is wholly without merit. 18 U.S.C. § 3501(a).

The judgment of the district court is affirmed.

FAHY, Senior Circuit Judge, concurring in affirmance and in the majority opinion with the following qualifications:

As to the position of appellant that due to the loss of his notes the testimony of Officer Tropf should have been stricken, I do not read the opinion to hold that a claim of good faith loss of notes is in and of itself the answer. If the issue here turned on good faith I think a more searching inquiry as to the circumstances of the loss would be required. See United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L. Ed.2d 537 (1969); United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642 (1971). The availability of contemporaneous notes of a witness is of great importance to the fairness of a trial, due to the importance of cross-examination. The courts must insist upon the careful preservation of such notes. I agree, however, that the testimony of Officer Tropf was not required to be stricken. The objection to Officer Tropf's testimony raised below and in this court is based solely on the allegation that the notes are statements required to be produced in accordance with the provisions of the Jencks Act. The record is too sketchy as to the nature of the notes to conclude they came within the Jencks Act; and no further inquiry with respect to them was sought at trial, or is sought on the appeal.