**UNITED STATES of America**

v.

**Bennie E. BARNES, Appellant.**

**No. 80–1055.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 5, 1980.

Decided Dec. 1, 1980.

Randy I. Bellows, Washington, D. C., with whom Silas J. Wasserstrom, Washington, D. C., was on the brief, for appellant.

Thomas C. Hill, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., H. Lowell Brown and Michael W. Farrell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before MacKINNON, MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Opinion concurring in the result filed by Circuit Judge MacKINNON.

MIKVA, Circuit Judge:

Appellant, Bennie E. Barnes, appeals the denial of his petition to vacate his sentence under 28 U.S.C. § 2255 (1976). He claims that he was deprived of his right to counsel at a hearing on the section 2255 motion held in the court below. We reverse and remand, for a de novo hearing, at which appellant's chosen counsel is to be present.

## I. BACKGROUND

This case involves a very brutal set of facts, but one that should not sidetrack us from our inquiry into the constitutionality of the procedures employed here. Barnes was convicted of felony murder, second-degree murder, and arson in connection with the death of his common-law wife. The death occurred in 1969 after a day of apparently heavy drinking by appellant and several arguments with his wife. According to Mrs. Barnes' statement on the day she died, appellant poured gasoline from a Clorox bottle around her and threw a lighted match on the floor. Mrs. Barnes claimed that her husband held her in the fire; Barnes alleged that he attempted to pull her out, but that she slipped and fell. After being found competent to stand trial,[1] Barnes was convicted in a trial before Judge June L. Green and sentenced to life imprisonment.[2]

Appellant's conviction was based in part on his statements to the police at the scene of the fire and at the police station following his arrest. Those statements may be divided into three groups: (1) When the first policeman arrived at the scene, the decedent's niece told him that Barnes had set the fire. The policeman asked Barnes if this was true; Barnes replied, "Well, I will take the blame for it." The sergeant said that he was not asking Barnes to take the blame, but was only asking whether he had

1. Although noting that Barnes' IQ was "in the defective range" and that psychiatric tests showed other deficiencies, the hospital report concluded that there was no "causal connection" between appellant's retardation and the alleged crime. See *United States v. Barnes*, 610 F.2d 888, 890 (D.C.Cir.1979).

2. For a more complete statement of facts, see this court's prior opinions at 610 F.2d 888 (D.C. Cir.1979) and 464 F.2d 828 (D.C.Cir.1972).

set the fire. Barnes responded, "Yes, I did, but it was an accident." Trial Transcript (Tr. I) at 17–19, 297–99.[3] (2) After he had been arrested, and as he was being led to the police car, Barnes said, "I am sorry I did it. What do you think they will do to me?" Tr. I at 58, 357. (3) At the police station, Barnes was read his rights and then tried to explain the incident to one of the policemen as an accident precipitated by his wife's picking up the Clorox bottle to throw at him. Tr. I at 35, 313.

Appellant's pretrial motion to suppress these statements on the ground that they had been obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was denied. Barnes appealed his conviction on a number of grounds, including the alleged *Miranda* violation. The conviction was upheld by this court, which ruled that the first statement was made before Barnes was in custody or was a suspect and thus before *Miranda* applied, and that the second statement was voluntarily made and thus also outside the scope of *Miranda*. 464 F.2d 828, 829–30 (D.C.Cir.1972), *cert. denied*, 410 U.S. 986, 93 S.Ct. 1514, 36 L.Ed.2d 183 (1973).

Barnes, acting pro se, filed a section 2255 petition on April 6, 1973, adding to his claims on appeal a claim of ineffective assistance of counsel. That motion was denied on the same day without a hearing, and this court refused to grant leave to appeal *in forma pauperis*.

■ Appellant then obtained the services of entirely new counsel, the Public Defender Service, and brought this second section 2255 petition, alleging for the first time that the statements at issue were not voluntary. Voluntariness was disputed on a number of grounds: at the time the statements were made, Barnes was suffering from severe burns; he was intoxicated as a result of having been drinking for the twelve previous hours; he was mentally retarded and educationally disadvantaged; his prior experience with the law was minimal, and he was not read his *Miranda* warnings until after the first two statements were made; and he was in shock from the fire and from witnessing his wife's injury.[4]

The court below again denied a hearing on the grounds that appellant had presented "nothing new" and that his claim had implicitly been presented and rejected by the prior opinion of this court. This court reversed, holding that appellant had never before raised the issue of voluntariness, but had only challenged the statements as violative of *Miranda*. 610 F.2d 888, 891–92 (D.C. Cir.1979).[5] The court directed the trial judge to hold a hearing on appellant's motion in order to determine two issues: (1) whether the statements were in fact voluntary; and (2) whether appellant had waived his right to raise the issue in a section 2255 proceeding by failing to do so at the trial and appeal stages.[6] As framed by this court, then, the issues to be resolved necessitated evaluation of the performance of both appellant's trial counsel and his attorney on direct appeal.

On September 18, 1979, the court below held an evidentiary hearing without first notifying appellant's current counsel, who

---

3. The various transcripts of prior proceedings in this case will be cited in this opinion as follows: Tr. I refers to the trial transcript; Tr. II to the hearing of September 18, 1979, the first hearing on appellant's petition; Tr. III to the hearing of November 13, 1979, a hearing on appellant's motion for reconsideration; and Tr. IV to the hearing of December 13, 1979, the second hearing on the petition.

4. These factors are all relevant considerations in determining voluntariness. *See United States v. Barnes*, 610 F.2d 888, 890–91 & nn. 12 16 (D.C.Cir.1979).

5. The court also rejected the argument that the jury instruction on voluntariness, given at trial over defense counsel's objection, supported the district court's finding that appellant's statements had already been determined to be voluntary. *See* 610 F.2d at 691.

6. In deciding the waiver issue, the court noted, the district court might have to determine whether the appropriate standard is the "deliberate bypass" test of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), or the "narrower" "cause and prejudice" test of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See* 610 F.2d at 893–94.

had brought the petition. No reason for this failure appears in the record; the government at oral argument "assumed" that the explanation was "administrative oversight." Present at the hearing were Barnes, his counsel at the original trial, the lawyer who handled his appeal, and an Assistant United States Attorney. Both of Barnes' former attorneys defended their prior representations of him. The transcript does not clearly reflect whether the court thought that appellant was appearing on his own behalf or whether she thought he was being represented by Rufus King, Barnes' former counsel on the direct appeal. In any event, no evidence was presented in appellant's favor, the court did most of the questioning of the two witnesses—Barnes and John Dwyer, the lawyer who represented Barnes at trial—and Rufus King's argument addressed only the issue of voluntariness, and not the question of waiver. The court on September 21 denied appellant's motion to vacate sentence. She held that appellant's trial counsel had reasonably decided to use the challenged statements to support the defense and that, in any case, the statements were voluntary.

The Public Defender Service then filed a motion to reconsider, arguing that the hearing of September 18 had been defective because Barnes had not been represented by counsel of his choice. The court below agreed to hold an additional hearing, but only for the purpose of allowing Barnes' counsel to present any additional or clarifying testimony or argument. Insisting that the first hearing had been "full and complete," she refused to disregard it and made clear at the second proceeding that, irrespective of what evidence appellant introduced there, she intended to adhere to her prior rejection of his petition. After that second hearing, held December 13, 1979, the court denied appellant's motion to reconsider "for the reasons set forth in its memorandum opinion of September 21, 1979." This appeal followed.

## II. DISCUSSION

### A. The Right to Counsel in Section 2255 Proceedings

■ Although the Sixth Amendment does not apply to section 2255 proceedings, which are civil in nature, this court will normally grant a section 2255 petitioner's request for an attorney. See Brown v. Cameron, 353 F.2d 835, 836 (D.C.Cir.1965) (per curiam); id. at 837 (Bazelon, C. J., dissenting); cf. Proctor v. Harris, 413 F.2d 383, 386 (D.C.Cir.1969). Moreover, the Fifth Amendment's due process clause requires provision of an attorney in some such cases. One of the factors to be considered is the complexity of the legal or factual argument to be made. See Dodd v. United States, 321 F.2d 240, 246 (9th Cir. 1963); United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 715 (2d Cir. 1960). Another is the capability of the petitioner. See Cates v. Ciccone, 422 F.2d 926, 928 (8th Cir. 1970); Brown v. Cameron, 353 F.2d at 837 (Bazelon, C. J., dissenting).

This court, by the terms of its remand for a hearing on the voluntariness issue, clearly intended that counsel would be present at the hearing. The issues the court directed the court below to consider are complex ones—not ones that could reasonably be thought to be within the competence of a person of limited intelligence and no legal training. See 610 F.2d at 893–95.[7]

■ Given this circuit's general practice of affording counsel in section 2255 proceedings, and given the nature of the case, we find that appellant was entitled to the presence of counsel at hearings held on his petition. And the right to counsel, whether under the Fifth or Sixth Amendment, "is

7. On remand, therefore, the district court may pursue either of two procedures. The court may first determine whether Barnes' statements were voluntary and hence admissible at trial. If so, appellant is entitled to no relief. Alternatively, the court may first determine whether the failure to raise the voluntariness issue either at trial or on appeal should preclude consideration of that claim in this § 2255 petition. If so, the court may deny relief without inquiring into the merits of appellant's contentions.
610 F.2d at 894–95 (footnote omitted).

the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 1449 n.14, 25 L.Ed.2d 763 (1970) (emphasis supplied). As the Ninth Circuit held in *McCartney v. United States*, 343 F.2d 471, 472 (9th Cir. 1965), although the provision of counsel in section 2255 proceedings may be discretionary, "[h]aving thus determined that counsel should have been appointed, the District Court should have taken steps to insure effective representation."

In charging that he was denied effective assistance of counsel, appellant makes two arguments: that his right to counsel was violated by the failure to notify the attorney of his choice of the September 18 hearing; and that the error was not remedied by the December 13 hearing at which his counsel was present. We agree on both points.

### B. *The September 18 Hearing*

It is not at all obvious that Barnes was represented by anyone at this first hearing. Even those present at the hearing seemed somewhat confused on this point. Judge Green called the first witness, John Dwyer, Barnes' trial counsel. She conducted all of the questioning and then asked both appellant and Rufus King, appellant's counsel on direct appeal, if they had additional questions for the witness. Both said no. Tr. II at 9. The judge then inquired whether either party had any evidence to present; the government attorney and King said no. *Id.* at 9–10. Speaking directly to Barnes, the court urged him to testify if he wished and directed him to consult with King. When Barnes took the stand, King asked if he was expected to examine Barnes, and the judge responded affirmatively. *Id.* at 10. The judge herself thus seemed unsure of who was representing appellant. She directed questions to both King and Barnes—if she had assumed that King was representing appellant, as she seems to have done subsequently, *see* Tr. III at 3, those inquiries would properly have been made only to King.

Obviously, King did not arrive at the hearing prepared to represent Barnes, whom he had not seen for many years. *See* Tr. II at 18; Tr. III at 29–30. In addition to his confusion over whether he was supposed to examine Barnes, the proceeding began with King's defending his failure to raise the voluntariness question on appeal. Although agreeing that the Public Defender Service had "turned up a substantial point," King said that he thought that he should take no position on the issue. Tr. II at 3–4. He offered no testimony, introduced no evidence, and cross-examined no witnesses. He briefly argued appellant's position at the end of the hearing, but addressed only the issue of voluntariness and not the question of waiver. *See id.* at 29–30.

It is thus not clear to us that Barnes was represented at all at the September 18 hearing. But even assuming that King was appearing on appellant's behalf, Barnes was clearly deprived of his right to be represented by counsel of his choice. *See Chandler v. Fretag*, 348 U.S. 3, 9–10, 75 S.Ct. 1, 99 L.Ed. 4 (1954); *United States v. Mardian*, 546 F.2d 973, 979–80 (D.C.Cir.1976); *Releford v. United States*, 288 F.2d 298 (9th Cir. 1961); *Lee v. United States*, 235 F.2d 219 (D.C.Cir. 1956). Not only was the Public Defender Service not notified of the hearing, but appellant was represented, if at all, by someone whose interests conflicted with those of appellant.

Effective assistance of counsel requires that one's attorney be "able and willing to advocate fearlessly and effectively." *United States v. Hurt*, 543 F.2d 162, 167–68 (D.C.Cir.1976). King was understandably unable to do so here because his performance as Barnes' appellate counsel was being challenged by the section 2255 petition. One of the issues outlined in this court's prior opinion was the question "whether the failure to raise the voluntariness issue either at trial *or on appeal* should preclude consideration of that claim in this § 2255 petition." 610 F.2d at 895 (emphasis supplied). The court below likewise recognized that appellant was alleging ineffectiveness on the part of both King and Dwyer. *See* Memorandum Opinion of September 21,

1979, at 2. And King himself was defensive about his representation of Barnes—at the beginning of the September 18 hearing, he attempted to explain his reasons for failing to make the voluntariness challenge on appeal. *See* Tr. II at 3–4. Perhaps it is not surprising, then, that King's argument on the motion touched only on the voluntariness of Barnes' statements and not on the question of waiver.

One certainly cannot reasonably expect an attorney to vigorously attack his own prior representation of a client as ineffective. Thus, even if King is deemed to have appeared on Barnes' behalf at the September 18 hearing, we find that representation ineffective because of the conflict of interest between the attorney and appellant.[8] As this court held in *United States v. Hurt*, 543 F.2d at 166:

> [W]e have no doubt that the conflict corrupts the [attorney-client] relationship when counsel's duty to his client calls for a course of action which concern for himself suggest that he avoid.

### C. *The December 13 Hearing*

The government argues that any error in the September 18 hearing was remedied by the second hearing, at which Barnes was represented by his chosen counsel, the Public Defender Service. Although the court below did grant appellant's motion for a rehearing, she refused to disregard the September 18 hearing or to exclude the testimony taken at that time. Several times she

characterized the first proceeding as a "full and complete hearing" at which "[c]ounsel [i. e., King] was present and represented Mr. Barnes adequately and properly." Tr. III at 2, 3. The purpose of the December 13 hearing was merely to allow the Public Defender Service to present any additional or clarifying testimony or argument. *See id.* at 2, 5. The court set the tone for that hearing by refusing, on the ground that "we had a full and complete hearing before," to allot to the case the three hours appellant's counsel requested or to follow his suggestion for a conference in chambers in order to arrive at prehearing stipulations and thereby to expedite the hearing.

Appellant was thus faced with a second hearing that was to be cursory and of limited scope. He was locked into the first hearing, at which he had been represented by an attorney whose interests clashed with his own—a situation perhaps more detrimental to appellant than one in which he had not been represented at all. He had not received effective assistance of counsel in selecting the witnesses to be called, in preparing his own testimony, in making evidentiary objections, etc. The court should have recognized the first proceeding as the travesty that it was and declared it void. Instead, she chose to consider it a bona fide hearing and to rely on it in ruling on appellant's petition. And she admitted testimony from the first hearing at the second for impeachment purposes.[9]

---

8. Because we find that appellant was deprived of effective assistance of counsel on the grounds discussed above, we do not decide whether King's representation was also ineffective because of the lack of preparation and consultation time. Likewise, we need not address the showing of prejudice required in ineffective assistance of counsel cases by this court in *United States v. Decoster*, 624 F.2d 196 (D.C. Cir.1979) (en banc). Proof of prejudice is "at once difficult and unnecessary" in cases in which a claim of ineffective assistance is premised on the presence of a conflict of interest between attorney and client. *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942); *see Holloway v. Arkansas*, 435 U.S. 475, 489–91, 98 S.Ct. 1173, 1181 82, 55 L.Ed.2d 426 (1978); *Decoster*, 624

F.2d at 202; *id.* at 235–37 (MacKinnon, J., concurring).

9. The government maintains that *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), overruled this court's decision in *Harrison v. United States*, 387 F.2d 203 (D.C. Cir.1967), *rev'd on other grounds*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), and permitted Barnes' testimony at the September 18 hearing to be used for impeachment purposes at the December 13 hearing. We need not address this claim because our finding that the second hearing did not remedy the defect in the first is based on all the factors discussed in text and not merely on the admission of appellant's testimony from the first proceeding at the second hearing. ·

Moreover, it became quite obvious early in the December 13 hearing that the court had already made up her mind regarding the merits of appellant's petition. She characterized the statements whose voluntariness appellant was contesting as ones that no court would exclude. *See* Tr. IV at 14. She expressed the opinion that "if there ever was a case that had no doubt it was this one." *Id.* at 16.[10] And she continued to believe that voluntariness was an issue raised at trial and decided in the government's favor by this court. *See id.* at 14. It is, therefore, not at all surprising that the court concluded at the end of the December 13 hearing:

> I believe this Court has ruled before that it was not voluntary and we would, of course, still make the same ruling, since we haven't heard anything different.

*Id.* at 86–87.

The December 13 proceeding was, therefore, merely an extension of the first defective hearing rather than a fresh look at appellant's petition. Not only did the court below specifically refuse to disregard the September 18 hearing, but she appeared irrevocably tied to her earlier decision. The second hearing thus could not rectify the deprivation of effective assistance of counsel at the prior hearing.

Although we find that the court below was disposed against appellant's claim of involuntariness, we decline to mandate reassignment to another judge. We emphasize, however, that appellant is entitled to a de novo hearing on his petition, which raises an issue that was *not* decided at or before trial and has *not* been ruled on by this court. This may well be a case appropriate for reassignment under the district court's rules. Moreover, if the court below feels that she is unable to approach this case with an unjaded eye, she should recuse herself. Appellant is also, of course, free to move for recusal.

## III. CONCLUSION

For no obvious reason appellant was denied his right to effective assistance of counsel of his own choosing. "Administrative oversight" may explain the failure to notify the Public Defender Service of the September 18 hearing, but it cannot justify the failure of the court below to inquire when appellant's attorney was missing or the failure of the government to bring that absence to the court's attention and to urge continuance of the hearing. Neither Barnes nor King could reasonably have been expected to alert the court to Barnes' lack of representation or to object to the judge's apparent designation of King to represent appellant. It was the responsibility of the court and the government to take the initiative to protect appellant's right to counsel. And that duty was not discharged by permitting appellant to go through the futile exercise of the December 13 hearing. Accordingly, we reverse and remand the case for a de novo hearing on the issues outlined in this court's 1979 opinion.

*Reversed and remanded.*

MacKINNON, Circuit Judge, concurring in the result.

I concur in the remand but would limit the court's remarks to the following. It appears that on remand at the first hearing the defendant was not represented by the counsel he had selected to represent him in that proceeding, and that the facts covered by the testimony taken at that first hearing were not the subject of testimony at the second hearing where Barnes was properly represented by his chosen counsel. Because of the absence of defendant's counsel at the first hearing the testimony taken at that time should not have been used in any respect at the second hearing. It was error to use such testimony to the limited extent that it was used. The second hearing should have consisted of a full *de novo* hearing on all issues raised by appellant just as though the first hearing had never been held.

10. *See also* Tr. IV at 86 ("[I]t is inconceivable to this Court that, under those circumstances, this man would have been acquitted.").

With reference to the judge's qualifications to sit on the case, I see nothing in her comments that disqualifies her from continuing to sit. Such remarks all represent fair comment on the evidence introduced in open court before her. Recusal is a matter largely in her own judgment. *See United States v. Grinnel Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1967) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."); *Tynan v. United States*, 376 F.2d 761 (D.C. Cir.), *cert. denied*, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967); *Craven v. United States*, 22 F.2d 605 (1st Cir.), *cert. denied*, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1927).