**Robert J. PODLASKI, Plaintiff, Appellant,**

v.

**Fred A. BUTTERWORTH, Defendant, Appellee.**

No. 81-1581.

United States Court of Appeals, First Circuit.

Heard Feb. 9, 1982.

Decided April 28, 1982.

John P. Courtney, Boston, Mass., for plaintiff, appellant.

Michael B. Roitman, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Barbara A. H. Smith, Asst. Atty. Gen., Boston, Mass., Chief, Criminal Appellate Division, were on brief, for defendant, appellee.

Before CAMPBELL and BREYER, Circuit Judges, and GARRITY,* District Judge.

BREYER, Circuit Judge.

Appellant Podlaski was convicted in the Massachusetts state courts of first degree

---

\* Of the District of Massachusetts, sitting by designation.

murder and sought habeas corpus relief in federal district court. He appeals from its denial. His basic claim is that the state trial court wrongly admitted a highly incriminating statement that he gave to police without the prior warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Commonwealth responds that the questioning was proper because it was "preliminary," taking place before appellant was "in custody;" thus no warnings were required. We agree with the Commonwealth and affirm the district court's judgment.

We take the relevant facts to be as follows: In the early hours of May 3, 1977, police officers Zweihorn and MacCarthy were on patrol in South Boston. They received a message telling them that there was a man injured and lying on Woodward Street. They arrived at Woodward Street at about 3 a. m., as an ambulance pulled away. A woman who lived on the street, Mrs. Jan Antonik, called out to tell Officer Zweihorn what she had witnessed:

> She said that the ambulance just left with the man they dragged down the street. I said, 'Dragged which way.' 'Down towards Leeds Street. They came out of that house across the street, 40 Woodward, three men, dragged him out, kicking him, dragged him down to Leeds· Street.' I said, 'Where did they go from there.' She said, 'Don't know, they ran around Leeds Street.'

Upon hearing this, Zweihorn and MacCarthy went over to 40 Woodward Street, saw the lights inside go out, knocked, received no response, and returned to Mrs. Antonik, who told them about a back entrance to 40 Woodward.

The officers then went to the back of 40 Woodward and saw Podlaski coming out of the cellar through a bulkhead door. Officer MacCarthy asked him his name, which he gave. Officer Zweihorn asked his address, and whether he lived there, to which he responded he was soon moving. And, according to appellant, the officers then asked him whether anyone else lived in the house and whether he knew anything about "a

fellow that has been injured out in the street." Appellant answered, saying, "The fellow called my mother a [obscenity] and I had to give it to him. I had to do him in." While the Commonwealth lists a slightly different order of questions and answers, the timing is not dispositive.

■ What is dispositive, in our view, is this court's prior case of *Borodine v. Douzanis*, 592 F.2d 1202 (1st Cir. 1979). In that case, police found the defendant leaning over the murder victim's body in the basement of a house, upset and asking for help. The police asked him to move into a small adjoining laundry room and then questioned him for about ten minutes. We noted that in *Miranda* itself the Supreme Court disclaimed any legal need for warnings prior to "[g]eneral on-the-scene questioning as to facts surrounding a crime." *Miranda v. Arizona*, 384 U.S. at 477–78, 86 S.Ct. at 1629. In *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977), the Court added that warnings are not required "simply . . . because the questioned person is one whom the police suspect." The issue is whether the person questioned is "in custody." And, as we pointed out, this circuit has held that "custody" is tested objectively, not subjectively. There must be "at least some objective manifestation that the defendant was 'deprived of his freedom of action in [a] significant way.'" *Fisher v. Scafati*, 439 F.2d 307, 310 (1st Cir.), *cert. denied*, 403 U.S. 939, 91 S.Ct. 2256, 29 L.Ed.2d 719 (1971). We consequently found the questioning in *Borodine* to be part of a legitimate police attempt to investigate the crime, and we held that it was lawful.

■ We fail to see how Podlaski was any more "in custody" while on the back cellar steps of his house than was Borodine in the laundry room. In neither instance was the defendant told he was under arrest; in both cases he was in a home familiar to him; in both cases police activity was consistent with investigatory questioning. And, if, in either case, the defendant inferred that he would be stopped if he had tried to leave, that inference would likely have been based

in part upon subjective knowledge of his own guilt.

Appellant's "custody" argument essentially amounts to a claim that the police *would* have arrested him had he tried to leave and that the facts would have warranted their doing so. We reject the implicit assumption that *Miranda* concerns what the police *would have* done, rather than what they did do. We also are less certain than the appellant that he would have been arrested and charged since there is no evidence that Mrs. Antonik described him to the police.[1] Moreover, although later-discovered evidence revealed that all three assailants had returned to 40 Woodward Street before the police arrived, the police at that time did not have strong grounds to believe that the man to whom they were talking was one of the three assailants that had, when last sighted, run around Leeds Street.

Even if, however, the hypothetical actions of the police were relevant and they would not have permitted him to leave had he tried to do so, on the facts of this case we would still reject appellant's claim. *See United States v. Barnes*, 464 F.2d 828 (D.C. Cir.1972), *cert. denied*, 410 U.S. 986 (1973) (statement admissible where witness told police officer that Barnes was guilty of arson, officer turned to Barnes and asked whether that was true, and Barnes replied in the affirmative). One of the primary purposes of preliminary questioning is to separate a group of persons possibly involved in a crime into those who should and those who should not be arrested—to decide whether all, some, or none should be charged. To turn all such questioning into custodial interrogation, requiring *Miranda* warnings in all cases, may help those eventually charged. But, it could also seriously interfere with the process of information gathering and on occasion force the police to cast their net of arrest too wide, significantly interfering with the liberty of the innocent. Indeed, in this case the questions

that the officers asked Podlaski (and might equally well have asked an innocent resident) were apparently aimed at deciding how many people were living in the house (an abandoned building where squatters lived) as well as what had happened. If they had learned, for example, that dozens of people lived in the house, or that the three assailants had not returned to the house (or had returned and again left), they most likely would have investigated further before arresting Podlaski. The fact that, in the absence of preliminary questioning, they *might* have decided to arrest all those in the house, does not make all such questioning "custodial," for their questions were directly relevant to a decision about *whom* to take into custody: some, all, or none of the persons they found at 40 Woodward Street. (In fact, two of the five residents of the house were not arrested.) In any event, there is no evidence that the "arrest" decision had yet been made, let alone communicated to Podlaski through "objective" circumstances.

For these reasons, we hold that appellant was not yet "in custody," his questioning was preliminary and investigatory, and *Miranda* warnings were not required. Appellant conceded at oral argument that his second claim, relating to the adequacy of the evidence to support a first degree murder conviction, depended on the success of his *Miranda* claim and the exclusion of the inculpatory statements from the record. Appellant is correct in this concession; there is no claim of adequate constitutional dimension. *Jackson v. Virginia*, 443 U.S. 307, 314, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979); *Snowden v. Hughes*, 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944).

*Affirmed.*

---

1. There is testimony that Mrs. Antonik's husband saw the men go back into 40 Woodward, but there is no evidence that he told this to his wife or that his wife passed the information to the officers.