780 F.2d 1023
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
TIMOTHY DUANE NEAL, Defendant-Appellant.
 84-1177
 United States Court of Appeals, Sixth Circuit.
 11/12/85
 
 AFFIRMED
 E.D.Mich.
 On Appeal from the United States District Court for the Eastern District of Michigan
 BEFORE: KEITH, KENNEDY and KRUPANSKY, Circuit Judges.
 PER CURIAM:
 
 
 1
 On October 20, 1983, appellant, Timothy Neal, was indicted by a grand jury in the Eastern District of Michigan for armed bank robbery and assault. On December 27, 1983, appellant filed a pretrial motion to suppress his confession to the robbery. After an evidentiary hearing, the district court judge denied appellant's motion to suppress and ruled that the confession was voluntarily made. The government subsequently introduced appellant's confession at trial. The jury returned a verdict of guilty and appellant was subsequently sentenced to fifteen years imprisonment. For the reasons set forth below, we affirm the jury conviction.
 
 
 2
 On October 13, 1983, two armed masked men robbed the Bank of the Commonwealth in Beverly Hills, Michigan. In the course of the robbery, a bank teller, Victoria Rytel, set off a silent alarm. Beverly Hills police officer Roger Goodes picked up the alarm and went to the bank where he saw two black men run from the bank and get into a white car. While in pursuit, the two suspects exited the car and ran through some backyards. Officer Goodes radioed a description of the suspects and the direction they were running. Goodes then searched the abandoned getaway car and found a canvas mail bag, a gun and money on the floor. Upon further investigation by Beverly Hills Detective Robert S. Jean, it was also established that the amount of money found in the white Ventura ($31,004) was the exact same amount missing from the bank. Officer Goodes later identified appellant as one of the suspects who fled from the car.
 
 
 3
 Pursuant to Officer Goodes' description, Beverly Hills Police Officer Gordon Hogan, apprehended appellant as he came running from between two houses. The appellant did not have a weapon, mask or money on him. At that point, the officer did not read appellant his rights or question him about the robbery. Instead, Officer Hogan transported appellant to the Beverly Hills Police Department and placed him in a holding cell. Approximately 3 hours later, FBI Special Agent Hullinger, Beverly Hills Detective Robert Peek and Detective St. Jean took appellant from his holding cell. The cell was described as a 6 X 6 cell with a concrete bench and no sink or toilet. The officers and agent identified themselves, informed appellant of the charges against him and read him the Miranda warnings. The appellant said he did not want to cooperate or discuss the incident. Questioning ceased and appellant was taken back to the holding cell where he was processed by Detectives Peek and St. Jean.
 
 
 4
 Detective Peek testified when he began to fingerprint appellant, the appellant requested to make a telephone call. Appellant was allowed to make a telephone call from the detective's office although Detective Peek did not recall whether it was before or after defendant had made a statement. Special Agent Hullinger testified that defendant was allowed to make two telephone calls only after all the questioning of him was finished and before he was put back in the holding cell for the afternoon.
 
 
 5
 Before appellant was processed, and immediately after he refused to talk to the detectives, Special Agent Hullinger reapproached the appellant. Appellant had not requested to speak with Agent Hullinger who told the appellant to listen to him. Agent Hullinger informed appellant that he had been caught and charged with armed robbery, that he was facing a long time in jail, that the officers were interested in the identification of the second person involved in the robery and that if appellant cooperated his cooperation would be made known to the judge at the appropriate time. Agent Hullinger made no threats, did not touch the defendant and spoke to him in a normal voice. Defendant made no response to Agent Hullinger's statement.
 
 
 6
 A short while later, appellant advised Detective Peek that he wanted to turn 'state's evidence'. He was taken to the detective room where Detective St. Jean again read him the Miranda warnings from a printed form. The appellant stated that he understood his rights. When he was asked if he wanted an attorney he responded 'no, not really' and that he wanted to give 'state's evidence'. He then waived his rights and signed the standard form.
 
 
 7
 At the time appellant gave his statement, he did not appear to be intoxicated, drugged or unable to understand what was being said to him. Special Agent Hullinger conducted the interview in which appellant confessed his role in the robbery. Appellant stated that Marlon Johnson had approached him about committing the robbery, that on October 13, 1983 they had driven a white, 1973 Ventura and that he had used a loaded, nickel plated Python handgun to rob the bank.
 
 
 8
 After the appellant gave this oral statement he was asked to write it out. He informed the officers that he had trouble writing and that they could write it for him and he would sign it. The officers informed appellant that this was not property procedure and decided to tape record the confession. Prior to taping the statement, an officer read the Miranda warnings to appellant for the third time. At this point, appellant responded that he wanted an attorney, and the officers immediately stopped the questioning. At no time prior to this had the defendant requested an attorney.
 
 
 9
 The defendant appeared startled when the questioning stopped and asked 'why'. When he was told that no questions could be asked if he wanted an attorney, the defendant suggested erasing the tape and beginning over, stating that he thought if a lawyer was there the statement would be more effective against the other persons involved. The confession was not taped and appellant was allowed to make his telephone calls.
 
 
 10
 The trial court denied the appellant's motion to suppress on the grounds that the confession was voluntarily made in accordance with 18 U.S.C. Sec. 3501. On appeal, the appellant first contends that the trial court erred in admitting his statement into evidence at trial because the police repeated their request for a statement from appellant. We do not agree.
 
 
 11
 The question to be determined by this Court is whether the trial court correctly found that the defendant's right to end questioning at the point he requested an attorney was scrupulously honored by the police officers involved. Michigan v. Mosley, 423 U.S. 96 (1975). The fact that officers question a defendant on more than one occasion after he has invoked his right to remain silent is not in and of itself sufficient to suppress a statement. Thus, if the circumstances of the interrogations involved no threats or coercion and the defendant's right to remain silent was scrupulously honored, the statement need not be suppressed. Michigan v. Mosley, 423 U.S. 96 (1975).
 
 
 12
 The appellant next contends that he was coerced into giving an involuntary statement to the police because after he stated that he did not want to talk to the police, Special Agent Hullinger told him that he was facing a long time in jail. We find this argument to be without merit.
 
 
 13
 The test for the voluntariness of a confession is whether in light of the totality of the circumstances, the government obtained a statement by coercion or improper inducement. Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). A factual inquiry into the voluntariness of the statement should focus on the conduct of the law enforcement officers involved. Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). An important factor in determining the question of the voluntariness of a statement is whether Miranda warnings were read to the defendant. United States v. Barnes, 662 F.2d 777 (D.C. Cir. 1980).
 
 
 14
 The Fifth Circuit in United States v. Ballard, 586 F.2d 1060 (5th Cir. 1978) held that advising a defendant of the maximum statutory penalties for an offense is not improper if it is done in a noncoercive manner. The record at the suppression hearing and at trial reveals that the appellant requested this particular session with the police, that Agent Hullinger spoke to the appellant in a normal, non-threatening voice, and that appellant waived his rights and agreed to give a statement. The record also establishes that later appellant agreed to have his statement recorded and that the officers read appellant his Miranda warnings for a third time. At this point appellant requested an attorney and the officer immediately ceased his questioning. Questioning was discontinued even though the defendant was willing to erase the tape and begin again. At no time prior to this had the appellant asserted his Sixth Amendment right to an attorney.
 
 
 15
 Nor do we find merit in appellant's contention that Agent Hullinger's reference to cooperation induced him to confess. The Ninth Circuit in United States v. Tingle, 658 F.2d 1332 (9th Cir. 1981) addressed the issue of whether it was permissible for police officers to tell a suspect that his cooperation would be made known to the authorities. Citing United States v. Glasgow, 451 F.2d 557 (9th Cir. 1971) the Tingle court held that in certain circumstances it was permissible. In Glasgow the court held that a representation to a defendant that the court would be informed of a defendant's cooperation did not necessarily render a confession involuntary.
 
 
 16
 The court in Tingle made a distinction that is important to the instant case. It held that while it may be permissible to tell a suspect that his cooperation would be made known to the court it was not permissible to tell a suspect that his refusal to cooperate would be used against him by the authorities. The defendant in the case at bar was told that his cooperation would be made known to the judge. He was never told that any refusal to cooperate would be used against him. Thus, the record on which this appeal is based is devoid of any evidence that the defendant was coerced, threatened or induced to give his statement by improper conduct on the part of the officers involved.
 
 
 17
 Finally, appellant contends that the district court did not follow the Supreme Court guidelines in Michigan v. Mosley, 423 U.S. 96. In Mosley, the Supreme Court prescribed several factors relevant to determining whether a defendant's right to cut off questioning has been scrupulously honored if the police renew interrogation. These factors are (a) whether the police immediately ceased the interrogation upon defendant's request; (b) whether they resumed questioning only after the passage of a significant period of time and provided fresh Miranda warnings, and (c) whether they restricted later interrogation to a crime that had not been the subject of the first interrogation. Michigan v. Mosley, 423 U.S. at 106.
 
 
 18
 Although the Supreme Court in Mosley discussed these three factors, the Court did not intend them to become a per se test. The Supreme Court in Mosley utilized these factors to determine in the totality of the circumstances that the admission in evidence of Mosley's incriminating statements did not violate Miranda. Mosley at 103, 104, 105. Our focus is whether the police failed to honor the decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persistent repeated efforts to wear down his resistance and make him change his mind. Mosley at 105, 106.
 
 
 19
 The totality of the circumstances in this case reveal that the officers scrupulously honored the defendant's right to cut off questioning. The trial court's decision to allow the introduction of the defendant's statement at trial is supported by the record of the suppression hearing and the trial and those findings are not clearly erroneous.
 
 
 20
 Thus, the appellant has not met his burden to show that the trial court's decision is clearly erroneous.
 
 
 21
 Accordingly, the jury conviction for armed bank robbery is affirmed.