# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 13, 2012          Decided July 19, 2013

No. 12-3015

UNITED STATES OF AMERICA,
APPELLEE

v.

RUSSELL JAMES CASO, JR.,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cr-00332-1)

———

*Elizabeth G. Oyer* argued the cause for appellant. With her on the briefs was *Scott M. Noveck*.

*Lauren R. Bates*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief was *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, and *Mary Ann Snow*, Assistant U.S. Attorneys.

Before: GARLAND, *Chief Judge*, and ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: Russell James Caso, Jr. is innocent of the crime for which he was charged and convicted. The government does not dispute the point. Nonetheless, Caso was denied an opportunity to collaterally attack his conviction and sentence because he could not demonstrate that he is also innocent of a separate and uncharged offense that has a lower sentencing range under the United States Sentencing Guidelines. Because Caso was not required to make such a showing, we reverse the order denying his motion to vacate his conviction and sentence.

I

Caso's conviction arose out of his work for former United States Representative Curt Weldon. Caso initially served as one of Representative Weldon's legislative assistants. In 2005, he was appointed as the Representative's chief of staff. During this time, Representative Weldon was approached by a nonprofit consulting firm ("Firm A") to take legislative action on two proposals implicating relations between the United States and Russia. The same firm retained Caso's wife to edit written drafts of those proposals. Over the course of several months, Firm A paid Caso's wife $19,000 for what appear to be *de minimis* services. Mem. & Order Denying Mot. Vacate 2, *United States v. Caso*, No. 07-332 (D.D.C. Jan. 12, 2012) ("Dist. Ct. Op.").

Caso, like many officers and employees of the United States Congress, was required to file an annual disclosure statement detailing, among other things, the sources of "income earned by a spouse from any person which exceed $1,000." 5 U.S.C. app. 4 § 102(e)(1)(A); *see generally* 5 U.S.C. app. 4 §§ 101 *et seq.* ("Ethics in Government Act of 1978"). Despite this requirement, Caso failed to list Firm A's payments to his wife on his 2005 disclosure statement. Nonetheless, Caso signed the

statement, certifying that it was true, complete, and correct. Dist. Ct. Op. 2.

On December 4, 2007, the government charged Caso with conspiracy to commit honest-services wire fraud, in violation of 18 U.S.C. §§ 371, 1343, and 1346. *See* 18 U.S.C. § 371 (proscribing conspiracy to defraud the United States); *id.* § 1343 (proscribing "any scheme or artifice to defraud" that involves the interstate transmission of signals over a wire); *id.* § 1346 (defining "scheme or artifice to defraud" to include "a scheme or artifice to deprive another of the intangible right of honest services"). On the same day, Caso entered into a plea agreement, admitting that he had intentionally failed to disclose Firm A's payments to his wife and that "[a] reason for this non-disclosure was that [he] knew that his wife's financial relationship with Firm A created a personal conflict of interest." Statement of Offense 3-4 (Dec. 7, 2007) (Appellant's App. 14-15); *see* Plea Agreement 2 (Dec. 7, 2007) (Appellant's App. 19).

On July 30, 2009, Caso was sentenced to three years' probation, including a 170-day term of home confinement. Caso's term of probation ended on August 14, 2012, several months before oral argument on this appeal was heard. *See* Appellant's Br. 9. The expiration of Caso's term of probation does not moot Caso's appeal, however, because his conviction has collateral consequences. *See Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968); *Hamdan v. United States*, 696 F.3d 1238, 1244-45 (D.C. Cir. 2012); *United States v. Maddox*, 48 F.3d 555, 560 (D.C. Cir. 1995).

Shortly after Caso was sentenced, the Supreme Court handed down *Skilling v. United States*, 130 S. Ct. 2896 (2010), a decision that substantially limited the permissible reach of 18 U.S.C. § 1346, the honest-services fraud statute. Prior to *Skilling*, the government had used that statute to prosecute

public officials who failed to disclose conflicts of interest, on the theory that such nondisclosure constituted a "scheme or artifice to deprive another of the intangible right of honest services," 18 U.S.C. § 1346. *See Skilling*, 130 S. Ct. at 2932-33. In *Skilling*, however, the Court interpreted § 1346 more narrowly. In an effort to avoid a "vagueness shoal," *id.* at 2907, the Court held that § 1346 "proscribe[s] bribes and kickbacks -- and nothing more." *Id*. at 2932.

After the Supreme Court issued its decision, Caso filed a motion under 28 U.S.C. § 2255 to vacate and set aside his conviction and sentence on the ground that "the conduct to which he admitted in the statement of the offense -- which did not stipulate [his] receipt of a bribe or a kickback -- does not constitute an offense under § 1346 following *Skilling*." Dist. Ct. Op. 4; *see* Def.'s Mot. Vacate 1 (Apr. 25, 2011). The government opposed the motion. It did not dispute that Caso was "'actually innocent' of the honest services wire fraud upon which his conspiracy conviction was based, as that offense now is defined under *Skilling*." Opp'n to Def.'s Mot. Vacate 16 (Nov. 3, 2011).[1] But it maintained that Caso had procedurally defaulted his *Skilling* challenge by failing to directly appeal his conviction on the ground that the conduct to which he pled did not constitute an offense. *Id.* at 9-10; *see* Dist. Ct. Op. 6.

The district court agreed with the government. It noted that a defendant is ordinarily required to first "raise the basis of his habeas challenge during trial or on appeal in order to assert that claim on collateral review." Dist. Ct. Op. 6 (citing *United States v. Frady*, 456 U.S. 154, 162 (1982)). Because Caso had failed

---

[1]*See* Dist. Ct. Op. 6 ("The defendant and the government both agree that the defendant is actually innocent of the crime of honest services wire fraud as defined post-*Skilling*, since the admitted-to conduct did not include a bribe or a kickback.").

to do so, the court held that he had presumptively defaulted his claim for collateral relief.  Finally, the court agreed with the government that Caso had failed to satisfy the narrow conditions for excusing such a default that the Supreme Court set out in *Bousley v. United States*, 523 U.S. 614 (1998).

In *Bousley*, the Court noted that, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate" one of two conditions:  (i) "cause" for the default and "actual prejudice" resulting therefrom, or (ii) that the defendant is "actually innocent."  *Id.* at 622 (citing, inter alia, *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986)).  To satisfy the second condition, the "petitioner must demonstrate that, '"in light of all the evidence,"' 'it is more likely than not that no reasonable juror would have convicted him.'"  *Id.* at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (quoting Henry J. Friendly, *Is Innocence Irrelevant?  Collateral Attack on Criminal Judgments*, 38 U. CHI. L. REV. 142, 160 (1970))).  In addition, and central to this appeal, the *Bousley* court announced the following rule:

> In cases where the Government has forgone *more serious charges* in the course of plea bargaining, petitioner's showing of actual innocence must *also* extend to those charges.

*Id.* at 624 (emphasis added).

Caso has not attempted to satisfy the first condition for overcoming procedural default; he relies solely on the second.  To meet that condition, the district court held that Caso had to demonstrate his "actual innocence" not only of the crime for which he was charged and convicted -- conspiracy to commit honest-services wire fraud, in violation of 18 U.S.C. § 371 -- but

also of the separate, uncharged offense of making a "materially false . . . statement" to the government, in violation of 18 U.S.C. § 1001. The court held that the government had forgone the false statement charge in the course of bargaining, and that this charge was just as serious as the honest-services conspiracy charge of which Caso had been convicted. Concluding that Caso could not show his actual innocence of the false statement charge in light of the admissions he made in his plea agreement, the court denied his motion to vacate his conviction and sentence.

The question at issue on this appeal is whether, in order to fall within the "actual innocence" condition for excusing procedural default, Caso is required to show his actual innocence of the false statement charge. Because that is a legal question, we review the district court's holding de novo. *United States v. Weaver*, 234 F.3d 42, 46 (D.C. Cir. 2000).

II

Caso proffers three arguments for why he should not be required to demonstrate his "actual innocence" of the separate, uncharged offense of making a false statement. In this Part, we set out his first two arguments. We do not, however, need to resolve them. As we discuss, even if Caso is wrong about them, his third argument -- which we set out in Part III -- is sufficient to require a decision in his favor.

A

Caso's first contention is that *Bousley* does not require him to show his "actual innocence" of making a false statement in violation of 18 U.S.C. § 1001 because he was never charged with that crime. Caso notes that *Bousley* states that a habeas petitioner must show his actual innocence of "more serious

*charges*" that the government "has forgone." *Bousley*, 523 U.S. at 624 (emphasis added). In his view, this refers to charges that were actually presented in an indictment or information.

But *Bousley*'s use of the word "charges" is not alone sufficient to establish Caso's position. There is nothing strained about concluding that a prosecutor can forgo "charges" either by dropping them after an indictment *or* by never bringing them at all. Notably, *Bousley* referenced charges forgone by the prosecution "in the course of plea bargaining," *id.*, a process that may either follow or precede the issuance of an indictment (or information).

To support his interpretation, Caso points us to *Bousley*'s application of its own rule. Kenneth Bousley had pled guilty to "using" a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), a provision that makes it unlawful to use *or carry* a firearm during such a crime. Bousley subsequently filed a 28 U.S.C. § 2255 motion collaterally attacking his conviction. After the Supreme Court narrowed the meaning of "using" to "active employment," *see Bailey v. United States*, 516 U.S. 137 (1995), Bousley contended that his guilty plea was neither knowing nor intelligent because the district court had misinformed him about the nature of the charged offense. The Court held that, although Bousley had procedurally defaulted this claim by failing to raise it on direct appeal, he could overcome that default if he could demonstrate that he did not "use" a firearm as the term was defined in *Bailey*. The Court rejected the government's argument that Bousley had to demonstrate he was actually innocent not only of "using" a firearm, but also of "carrying" one. *Bousley*, 523 U.S. at 624. The Court gave the following reasons:

> [P]etitioner's indictment charged him only with 'using' firearms in violation of § 924(c)(1). And there is no

> record evidence that the Government elected not to charge petitioner with 'carrying' a firearm in exchange for his plea of guilty.

*Id.*

Focusing on the first sentence in the above quotation, Caso maintains that he does not have to demonstrate his innocence of the false statement offense because the government never charged him under § 1001. But the Supreme Court did more than merely look to Bousley's indictment to see what the government charged. In addition, it observed that "there is no record evidence that the Government elected not to charge petitioner with 'carrying' a firearm in exchange for his plea of guilty." *Id.* In Caso's case, by contrast, the government contends (and the district court agreed) that it *does* have "record evidence" that it elected not to charge him with making a false statement in violation of 18 U.S.C. § 1001.

In support of this contention, the government points to an affidavit from its lead prosecutor, averring that the government had indeed contemplated charging Caso with violating § 1001, but had consciously forgone doing so as part of the plea agreement. Gov't Br. 27; *see* Decl. of Howard Sklamberg 2 (Supplemental App. at 84). Caso responds that only evidence created contemporaneously with a charging decision should be considered in determining what charges the government elected not to bring. Considering *post hoc* record evidence "would invite abuse," he argues, because the "government can always point to new or additional charges that its prosecutors could have or would have pursued but for the plea agreement." Appellant's Br. 24, 26.

But there is more than just *post hoc* evidence in this case. As part of the plea agreement, the government agreed that Caso

would "not be further prosecuted criminally for the conduct set forth in the attached Statement of Offense." Plea Agreement 1. For his part, Caso agreed that the Statement of Offense "fairly and accurately" described his conduct. *Id.* at 2. Although that statement did not specifically cite 18 U.S.C. § 1001, it did include admissions that were sufficient to establish at least a presumptive violation of that section. In particular, Caso stipulated that he had "intentionally failed to disclose that his wife received payments from Firm A" on his financial disclosure form, "even though he knew that he was required to do so." Statement of Offense 3-4. And he conceded that "[a] reason for this non-disclosure was that [he] knew that his wife's financial relationship with Firm A created a personal conflict of interest." *Id.* at 4. The district court noted that these contemporaneous writings made the prosecutor's affidavit "eminently credible." Dist. Ct. Op. 9.

Nonetheless, the relevant language in *Bousley* is ambiguous. The Court's reference to "record evidence" does not clearly resolve whether *post hoc* affidavits of the kind presented by the government should be considered in determining whether the government considered and then dropped a charge. Nor does the Court's reference to "forgone . . . charges" resolve whether the government's decision to forgo a charge must have been expressly made or whether it is sufficient that it be implicit in the conduct the defendant acknowledges in his plea. Because Caso wins this appeal even if we assume that the government agreed to forgo the false statement charge, *see infra* Part III, we need not resolve those questions today.

B

Caso's second argument is that *Bousley*'s "actual innocence" requirement does not extend to the § 1001 offense because that offense was not "more serious," *Bousley*, 523 U.S.

at 624, than the § 371 charge. In his view, it was at most "equally serious." The parties dispute the appropriate measure of seriousness, an issue we address in Part III. The government insists that the correct measure is the statutory maximum penalty; Caso contends that the correct measure is the Sentencing Guidelines range. But as Caso notes, even if we were to adopt the government's measure, the § 1001 charge of making a false statement and the § 371 charge of conspiring to commit honest-services wire fraud are equally serious: both have the same statutory maximum penalty of 5 years' imprisonment.[2]

The government argues, and the district court held, that *Bousley* requires a habeas petitioner to show not only that he is actually innocent of the charge to which he pled guilty, but also "of any charges of greater *or equal* seriousness" that the government forwent in exchange for the guilty plea. Gov't Br. 13 (emphasis added); *see* Dist. Ct. Op. 10-12. In response, Caso points to *Bousley*'s plain language, which only extends the showing-of-innocence requirement to "*more* serious charges." *Bousley*, 523 U.S. at 624 (emphasis added).

Once again, the *Bousley* Court's application of its own rule generates ambiguity with respect to the meaning of its language. As we noted above, in *Bousley* the Court looked to the indictment and other record evidence to determine whether the habeas petitioner had to show his actual innocence of "carrying" as well as "using" a firearm. Yet, as the government points out, the "carrying" offense bears the same statutory penalty as the

---

[2]The offense of honest-services wire fraud itself, 18 U.S.C. §§ 1343, 1346, is more serious than the false statement offense by any measure because it has a statutory maximum penalty of 20 years. Caso was charged only with conspiracy to commit such fraud under 18 U.S.C. § 371, which has a 5-year maximum.

"using" offense for which Bousley was convicted. *See* 18 U.S.C. § 924(c)(1). Likewise, the two offenses are assigned the same base offense level under the Sentencing Guidelines. *See* U.S. Sentencing Guidelines Manual § 2K2.4 (2008) ("U.S.S.G."). Hence, if it were unnecessary to show actual innocence of an "equally serious" charge, the Court's analysis would have been superfluous. The fact that the Court nonetheless undertook that analysis suggests that it intended the actual innocence requirement to extend to "equally serious" charges, notwithstanding that its language mentioned only "more serious" ones. Moreover, as we note below, the likely rationale for the *Bousley* rule supports requiring petitioners to show their innocence of equally serious charges. *See infra* note 6.

The few courts of appeals that have considered this issue appear divided with respect to its resolution.[3] And Caso is surely correct that we should hesitate before adding a condition not included in the express language of the Supreme Court's opinion. *See generally United States v. Oakar*, 111 F.3d 146, 153 (D.C. Cir. 1997). Once again, because Caso wins this appeal even if we assume that he must demonstrate his innocence of charges both equal to and more serious than the honest-services conspiracy charge, *see infra* Part III, we do not need to pursue this issue further.

---

[3]*Compare Lewis v. Peterson*, 329 F.3d 934, 937 (7th Cir. 2003) ("The logic of the *Bousley* opinion does not require that the charge that was dropped or forgone . . . be more serious than the charge to which the petitioner pleaded guilty. It is enough that it is as serious."), *with United States v. Johnson*, 260 F.3d 919, 921 (8th Cir. 2001) (implying that one charge must be "more serious" than the other).

12

III

Even if we assume that the government did forgo the false statement charge, and even if we assume that a habeas petitioner must show his innocence of a forgone charge that is of either equal or greater seriousness than the charge of conviction, Caso contends that we must nonetheless reverse the district court. That is so, he argues, because the § 1001 charge is of neither equal nor greater seriousness than the § 371 charge to which he pled guilty. Rather, a violation of § 1001 is a *less* serious offense than a violation of § 371. It is less serious, Caso maintains, because its Sentencing Guidelines range is lower and because the Guidelines provide the proper measure of the relative seriousness of offenses.

The government disagrees. It maintains, and the district court held, that seriousness can only be measured by comparing the statutory maximum penalties for each offense. As noted above, by that measure violations of § 1001 and § 371 are equally serious.

In Subpart A, we consider whether the Guidelines or the statutory maxima are the appropriate measure of seriousness under *Bousley*. In Subpart B, we apply our conclusion to the facts of Caso's case.

A

*Bousley* did not tell us which measure of seriousness to employ in determining which offenses are "more serious." Nor did it explain the rationale for requiring habeas petitioners to demonstrate their innocence of "more serious" offenses. Although intuiting the Court's unexpressed rationale is a tricky business, we must attempt to do so because determining which

measure of seriousness most closely satisfies that rationale is the best way to decide which measure to apply.

1. The parties appear to believe that the rationale for the "more serious offense" requirement rests on the dynamics of plea bargaining -- i.e., that it represents an effort to recreate the bargaining outcome that the parties would have reached absent the invalid charge. It is not clear, however, how the "more serious" requirement meshes with those dynamics. The government suggests that, in a case in which it has forgone a more serious charge, a showing of innocence regarding that charge is required because it would have demanded a plea to the more serious charge had it known the charge of conviction was invalid. That may well be true. But surely the government would have made the same demand if the only other charge had been a less serious one, and yet the *Bousley* rule does not encompass such a charge. Moreover, even if the government had demanded a plea to the more serious charge, it is by no means clear that the defendant would have acceded to that demand. It is possible that he would have agreed to plead rather than go to trial, in the hope of receiving leniency from the court. But it is also possible that he would have chosen to take his chances at trial rather than plead to a more serious charge carrying the risk of a higher sentence.[4] In short, the dynamics of plea bargaining are complicated -- even more complicated if we factor in offenses of equal severity -- and it is not at all clear that the "more serious" rule goes very far toward recreating the

---

[4]There is similar uncertainty regarding the scenario in which the remaining charge carries a lower sentence. It is possible that a defendant who agreed to plead to a more serious charge would have pled to a less serious charge if he had known that the offense of conviction was invalid. But it is also possible that, with his exposure limited to a lower sentence, the defendant would have preferred to take his chances at trial.

bargaining outcome the parties would likely have reached had they known the charge of conviction would be invalidated.[5]

Another, possibly more plausible, rationale relates to the equities of plea bargaining rather than to its dynamics. The Court may have regarded it as fair that, if the uncharged offense is more serious than the offense of conviction, the lesser penalty for the latter should stand unless the defendant can show that he is innocent of both offenses. This ensures, the Seventh Circuit has said, that the defendant does not receive an unjustified "windfall." *Lewis*, 329 F.3d at 936.[6] But if the only uncharged offense is less serious than the offense of conviction, it would plainly be unfair to force the defendant to suffer the greater penalty associated with a crime of which he can demonstrate his innocence. Whether or not the defendant is guilty of the less serious uncharged offense, there is no justification for making him bear a greater penalty for a crime that he did not commit. To put the point more sharply: we should not require a person to spend 30 years in prison on an erroneous murder conviction because he was guilty of an uncharged theft offense that would carry a sentence of one year.

2. In the end, it does not matter whether the rationale for the *Bousley* rule is rooted in the dynamics of the plea bargaining

---

[5]*See generally* Stephanos Bibas, *Plea Bargaining Outside the Shadow of Trial*, 117 HARV. L. REV. 2463, 2464-67 (2004) (noting that a host of structural distortions, including imperfect heuristics, psychological biases, lawyering problems, information deficits, and risk preferences all affect plea bargaining decisions).

[6]Similar considerations may suggest that the equity rationale's logic extends to an equal as well as more serious charge. As noted in Part II.B, however, there are contrary considerations. We do not need to resolve the question to resolve Caso's case.

process or in its equities (or in both). Either rationale leads to the conclusion that the appropriate measure of the seriousness of an offense must be derived from the Sentencing Guidelines rather than the statutory maximum penalty.

There is no doubt that, in deciding whether to plead and what to plead to, defendants rely primarily on their expected Guidelines exposure rather than on the statutory maximum for the offense. *See generally Peugh v. United States*, 131 S. Ct. 2072, 2085 (2013) (plurality opinion) (explaining that a defendant who is contemplating a plea "will be aware that the [Guidelines] range is intended to, and usually does, exert controlling influence on the sentence that the court will impose.").[7] The United States Attorneys' Manual makes clear that the government makes the same calculation in deciding the charges upon which it will insist. *See* U.S. ATTORNEYS' MANUAL § 9-27.300(A) (instructing United States Attorneys to charge "the most serious offense that is consistent with the nature of the defendant's conduct," and explaining that "[t]he 'most serious' offense is generally that which yields the highest range under the sentencing guidelines").

---

[7]Indeed, our cases have made clear that a defense counsel's conduct may be constitutionally deficient if counsel fails to advise his client of the correct Guidelines range he would face upon taking a plea. *See United States v. Hanson*, 339 F.3d 983, 990 (D.C. Cir. 2003); *United States v. Booze*, 293 F.3d 516, 518 (D.C. Cir. 2002); *United States v. McCoy*, 215 F.3d 102, 108 (D.C. Cir. 2000); *United States v. Gaviria*, 116 F.3d 1498, 1512 (D.C. Cir. 1997); *cf.* U.S.S.G. § 6B1.2 cmt. ("The Commission encourages the prosecuting attorney prior to the entry of a plea of guilty . . . to disclose to the defendant the facts and circumstances . . . that are relevant to the application of the sentencing guidelines.").

This reliance on the Guidelines is plainly logical. Although the government correctly notes that the Guidelines are no longer binding on district courts, *see United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court reminded us just this Term that they nonetheless remain the "lodestone of sentencing." *Peugh*, 131 S. Ct. at 2084 (majority opinion). "Even after *Booker* . . ., district courts have in the vast majority of cases imposed either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion. In less than one-fifth of cases since 2007 have district courts imposed above- or below-Guidelines sentences absent a Government motion." *Id*. Nor is this mere happenstance. Guidelines calculations are still "the starting point and the initial benchmark" for every sentencing decision, and "district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Id.* at 2080, 2083 (quoting *Gall v. United States*, 552 U.S. 38, 49, 50 n.6); *see United States v. Turner*, 548 F.3d 1094, 1099-1100 (D.C. Cir. 2008).[8] "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range.'" *Peugh*, 131 S. Ct. at 2083 (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011)). Accordingly, in deciding what charge to demand or to accept, the parties must necessarily look to the Guidelines.

Looking to the statutory maxima, by contrast, would provide the parties with little useful information. The statutory

---

[8]Moreover, a district court's "[f]ailure to calculate the correct Guidelines range constitutes procedural error." *Peugh*, 131 S. Ct. at 2080. And courts of appeals may -- and this Circuit does -- "presume that a within-Guidelines sentence is reasonable." *Id.* (citing *Rita v. United States*, 551 U.S. 338, 347 (2007)); *see United States v. Watson*, 476 F.3d 1020, 1023 (D.C. Cir. 2007); *United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006).

ranges are far broader than the Guidelines ranges. *Compare* 18 U.S.C. § 1001 (authorizing a sentence between 0 and 5 years absent special circumstances), *with* U.S.S.G. § 2B1.1 (generating Guidelines ranges as narrow as six months). And courts rarely sentence defendants to the statutory maxima. *See* U.S. SENTENCING COMM'N, SPSS DATAFILE FOR FISCAL YEAR 2012, *available at* http://www.ussc.gov/ Research_and_Statistics/Datafiles/index.cfm (data set indicating that approximately 1% of offenders sentenced in fiscal year 2012 received the applicable statutory maximum).

As we discuss below, Caso's Sentencing Guidelines range for both the § 1001 and the § 371 offense are well below the statutory maximum for each offense. Hence, if the rationale of the *Bousley* rule is to recreate the bargaining outcome that the parties would likely have reached absent an invalid charge, we must appraise any forgone charges just as the parties would have -- by reference to the Guidelines.

An equity rationale likewise requires resort to the Guidelines. On that rationale, a defendant should not be absolved of his conviction and sentence if he cannot show he is innocent of an uncharged crime that carries an even longer sentence. At the same time, a defendant should not be required to serve a longer sentence associated with a crime he did not commit, just because he cannot demonstrate his innocence of another crime that would have yielded a shorter sentence. Once again, knowing the statutory maxima is largely irrelevant to this analysis. The operative question is how severe a sentence the forgone charge would likely have yielded. Only the Guidelines can generate a reasonable answer to that question.

The sole argument the government makes for using statutory maxima as the measure of seriousness for *Bousley* purposes is that the maxima reflect Congress' judgment

regarding the relative seriousness of offenses. It is not even clear that this is correct as a matter of congressional understanding, as it was Congress that authorized the Sentencing Guidelines and mandated that district courts consider them in imposing sentences. *See* 28 U.S.C. § 994; 18 U.S.C. § 3553(a)(4).[9] But even if the statutory maxima do suggest Congress' view of the relative seriousness of offenses, a focus on *Congress'* perception responds to neither of the possible rationales for the *Bousley* rule: it is irrelevant both to the dynamics of plea bargaining and to its equities. And the government proffers no reason why the *Bousley* Court would have wanted congressional perceptions to govern a defendant's right to have his habeas claim heard if he was convicted of a crime of which he is actually innocent.

In sum, we conclude that the appropriate measure of the relative seriousness of offenses for purposes of the *Bousley* rule must be derived from the Sentencing Guidelines rather than the statutory maxima. *Accord United States v. Halter*, 217 F.3d 551, 553 (8th Cir. 2000); *United States v. Lloyd*, 188 F.3d 184, 189 n.13 (3d Cir. 1999).

B

Caso was sentenced for conspiracy to commit honest-services wire fraud, an offense with a Guidelines base offense level of 14. Pre-Sentence Report (PSR) ¶ 32; *see* U.S.S.G. § 2C1.1(a)(1) (2008); *id.* § 2X1.1(a). Because the value of the payments his wife received was more than $10,000 but less than $30,000, the base offense level was enhanced by

---

[9]*See also* U.S.S.G. § 1A1.3, at 2-3 ("Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity.").

four levels to 18. PSR ¶ 33; *see* U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(C). After a reduction for acceptance of responsibility, Caso's total offense level was 15. PSR ¶¶ 39, 40; *see* U.S.S.G. § 3E1.1(b). For a defendant like Caso, who had no prior criminal history, that total offense level corresponded to a Guidelines range of 18-24 months. PSR ¶ 82; U.S.S.G. ch. 5, pt. A.[10]

By contrast, the offense of making a false statement under 18 U.S.C. § 1001 corresponds to a base offense level of 6. *See* U.S.S.G. § 2B1.1(a)(2). Under the circumstances of this case, there appear to be no relevant enhancements. *See id.* § 2B1.1(b). With the appropriate reduction for acceptance of responsibility, the total offense level would have been 4. *See id.* § 3E1.1(a).[11] Because Caso had no prior criminal history, his Guidelines range would have been the lowest range possible, 0-6 months, *see id.* ch. 5, pt. A, well short of the 18-24 months range for a violation of § 371. On this basis, the false statement offense was the less serious offense for *Bousley* purposes.[12]

One of the government's arguments against using the Guidelines rather than the statutory maxima as the measure of

---

[10]*See* Dist. Ct.'s Statement of Reasons 1 (Aug. 13, 2009) (adopting the above calculations); Gov't Sent'g Mem. 3 (July 27, 2009) (recommending the above calculations but urging the court to apply an additional enhancement that would have increased the total offense level by 4 levels to 19).

[11]*See also* U.S.S.G. § 3E1.1(b) (limiting the reduction for acceptance of responsibility to 2 levels unless the offense level prior to the reduction is 16 or greater).

[12]*See* Appellant's Br. 38 & n.8. The government neither challenges nor addresses Caso's calculation of what his Guidelines range would have been for making a false statement.

seriousness is that several Guidelines factors do not relate to the seriousness of the statutory offense, but rather to the circumstances of the particular case. In this case, the enhancement for the value of the payments Caso's wife received is such a factor. In addition, there are other factors that relate to the characteristics of the defendant rather than to those of the offense: here, for example, Caso's acceptance of responsibility and his criminal history. Although we take the government's point, a good argument can be made that all of these factors are relevant to evaluating relative seriousness. All are part of the determination of the defendant's final Guidelines range and hence of his likely sentence, and both possible rationales for the *Bousley* rule depend upon knowing what the defendant's actual sentence likely would be -- not what some average or typical sentence might be for the mine run of those who commit the same statutory offense.[13]

But even if we were to consider the Guidelines shorn of any factors particular to the defendant or his conduct, we would reach the same result in this case. The base offense level for all public officials who conspire to commit honest-services fraud is 14; the base offense level for all those who make a false statement is 6. On this measure, the former remains the more serious charge.[14] The same is true if one looks to the resulting

---

[13]*Cf. Lloyd*, 188 F.3d at 189 n.13 ("[I]t is the *actual* penalty prospectively assessed this defendant for each Count -- determined in accordance with the refining criteria of the United States Sentencing Guidelines and set forth in the government's Presentencing Report -- that is relevant to our comparison of the seriousness of the respective charges at the time of the plea bargain.").

[14]*Cf. Halter*, 217 F.3d at 554 ("[T]he Guidelines themselves specifically refer to the 'most serious' count as being the one with the higher offense level. We choose to adopt this understanding of the phrase 'more serious' for the purpose of applying *Bousley*.") (citing

Sentencing Guidelines ranges for *any* criminal history category. *See* U.S.S.G. ch. 5, pt. A.

In a footnote, the government contends that, even if we do consider the Guidelines in measuring the seriousness of an offense, our "inquiry should not be limited solely to the applicable guideline range, but to the *actual* penalty prospectively assessed this defendant." Gov't Br. 35 n.17 (internal quotation marks omitted). In this regard, the government reminds us that Caso was not sentenced to 18-24 months on his § 371 charge. Instead, because the government filed a section 5K1.1 departure motion advising the court that Caso had provided substantial assistance to its investigation, Caso was sentenced to three years of probation, including 170 days of home confinement. *See* U.S.S.G. § 5B1.1(a)(1). But that suggests that Caso would have received an even lower sentence -- most likely, probation *without* confinement -- had he instead pled to the false statement charge, since the Guidelines authorize a sentence of probation for such a charge even *before* taking into account a defendant's cooperation. *See id.* §§ 2B1.1(a)(2); 5B1.1(a)(1).

In sum, by any relevant measure, the government did not forgo a more serious charge when it charged Caso with conspiring to commit honest-services wire fraud.

IV

Under the rule enunciated in *Bousley*, a defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise it in habeas if he can demonstrate that he is actually innocent both of the charge for which he was convicted and of "more serious" charges that the government forwent in

---

U.S.S.G. § 3D1.3(a) (1998)).

the course of plea bargaining. *Bousley*, 523 U.S. at 624.[15] If no "more serious" charges were waiting in the wings, the defendant need only demonstrate his actual innocence of the charge of conviction.

We hold today that the appropriate measure of "seriousness" for purposes of this rule must be determined by reference to the United States Sentencing Guidelines. This approach reflects the continued relevance of the Guidelines in charging decisions, plea bargaining, and sentencing, and best aligns with any plausible rationale for the *Bousley* rule. Because Russell Caso is actually innocent of his offense of conviction, and because the government did not forgo any more serious charge in the course of plea bargaining, the judgment of the district court is

*Reversed.*

---

[15]As noted in Part I, a defendant may also raise a procedurally defaulted claim if he can demonstrate "cause" for the default and "actual prejudice" resulting therefrom. *Bousley*, 523 U.S. at 622.