# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 13, 2020  Decided February 19, 2021
          Reissued April 5, 2021

No. 18-3067

UNITED STATES OF AMERICA,
APPELLEE

v.

ERIC SCURRY, ALSO KNOWN AS E,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00310-4)

*Mary E. Davis*, appointed by the court, argued the cause and filed the briefs for appellant.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Elizabeth Trosman*, *Elizabeth H. Danello*, *Arvind K. Lal*, and *Pamela S. Satterfield*, Assistant U.S. Attorneys. *Suzanne G. Curt*, Assistant U.S. Attorney, entered an appearance.

Before: MILLETT, PILLARD, and KATSAS, *Circuit Judges*.

Opinion for the Court filed PER CURIAM.

The central issue in this case is whether Eric Scurry knowingly and voluntarily entered a guilty plea as to certain drug and drug-related offenses. Scurry's argument that the plea was invalid solely because he misjudged the amount and type of evidence that might be introduced against him had he gone to trial fails. But because we have discovered an undeniable and unwaived conflict of interest between court-appointed counsel for this Section 2255 petition and Scurry, we reverse and remand for the appointment of conflict-free counsel to assist with Scurry's Section 2255 petition.

**I**

**A**

In 2009, the Federal Bureau of Investigation began investigating suspected narcotics distribution at an apartment complex in southeast Washington, D.C. *United States v. Scurry* (*Scurry I*), 821 F.3d 1, 5–6 (D.C. Cir. 2016). The Bureau focused on Eric Scurry, who it believed was dealing crack cocaine. *See id.* at 6. After reviewing evidence obtained from cooperating witnesses, physical surveillance, recorded conversations, pen-register records, GPS data, and other public records, investigators sought and obtained a wiretap on Scurry's cell phone.

Evidence gleaned from the Scurry wiretap led to court orders authorizing several additional wiretaps: First on Terrance Hudson's phone, then Robert Savoy's, then James Brown's, and finally Jerome Johnson's. Scurry is specifically named in the orders approving the Hudson wiretap, J.A. 86–87 ("There is probable cause to believe that * * * ERIC DEWAYNE SCURRY * * * and others yet unknown, have committed, are committing, and will continue to commit violations of" the law and "that particular wire communications

of * * * ERIC DEWAYNE SCURRY * * * and others yet unknown concerning the above-described offenses will be obtained through the interception for which authorization has herewith been applied."), and the Savoy wiretap, J.A. 106–107 ("There is probable cause to believe that * * * ERIC DEWAYNE SCURRY * * * and others yet unknown, have committed, are committing, and will continue to commit violations of [the law.]"). He was also named in several of the government's wiretap applications. *See* J.A. 81–82 (Hudson application); J.A. 95A–95B, 101 (Savoy application and accompanying affidavit); J.A. 110 (Johnson application).

Scurry, Hudson, Savoy, and Johnson were arrested and charged in late 2010; Brown was arrested and charged in 2011. The government alleged that all five men conspired, from November 2006 through November 2010, to distribute and possess with intent to distribute five kilograms or more of cocaine and 280 grams or more of crack cocaine. The government also charged Scurry with distributing crack cocaine, distributing crack cocaine within 1,000 feet of a school, and unlawfully using a communication facility (a telephone) to aid and abet drug distribution.

Each of the five defendants filed a motion to suppress wiretap evidence. Scurry's motion sought suppression of only the evidence obtained from the wiretap of his own phone. But Savoy and Johnson moved to suppress evidence from the wiretaps of their own and their co-defendants' phones, while Brown asked to suppress only evidence from the wiretaps of Savoy's phones. The district court rejected each motion. *See United States v. Savoy*, 883 F. Supp. 2d 101, 104 (D.D.C. 2012).

4

**B**

Throughout most of the district court proceedings, Scurry had been represented by Christopher Davis. But just a few days before trial was scheduled to start, Mary Davis, who is Christopher Davis's spouse, told the district court that she would be "standing in for Mr. Davis some days" (in particular, for jury selection) because Mr. Davis was occupied with other court matters. Transcript at 9, *United States v. Savoy*, No. 10-cr-00310 (D.D.C. Sept. 7, 2012), ECF No. 347. When Mary Davis raised the possibility that Mr. Davis would not be present for opening arguments, the district court responded that Mr. Davis should advise the other court that "trial takes precedence," and "[i]f [the other judge] doesn't believe it, I'll tell him myself." *Id*. at 7–8. On the day that Scurry's trial was set to start, Christopher Davis was absent, and Mary Davis appeared in her husband's place.

That same day, Scurry was considering a plea offer from the government. With Mary Davis as his only counsel present, Scurry accepted the plea offer. He pleaded guilty to conspiracy to distribute and possess with intent to distribute 280 grams or more of crack cocaine and a conspiracy to launder money gained from the drug distribution scheme.

Scurry's plea agreement included a condition: He reserved the right to appeal "the Court's Order of August 3, 2012, denying defendants' motion to suppress the wiretap evidence, specifically Documents [*sic*] 59"—that is, his own motion to suppress. J.A. 147–148. The agreement was explicit that Scurry could withdraw his plea "[o]nly in the event of a reversal of that decision" denying his own motion to suppress. J.A. 148. To confirm the point, the agreement separately stated that Scurry "reserves the right to appeal only the identified pretrial ruling[.]" J.A. 148.

Scurry's co-defendants entered plea agreements as well. But unlike Scurry's, two of the other plea agreements expressly preserved a broader right to appeal an order denying motions to suppress other than the defendant's own. *See* Plea Agreement at 9–10, *Savoy*, No. 10-cr-00310 (D.D.C. Sept. 7, 2012), ECF No. 213 (Johnson plea agreement, reserving right to appeal an order denying one of Savoy's motions); Plea Agreement at 10, *Savoy*, No. 10-cr-00310 (D.D.C. Sept. 10, 2012), ECF No. 224 (Hudson plea agreement, reserving right to appeal an order denying Savoy's motions).

Under the plea agreement, Scurry was sentenced to twelve years of imprisonment, followed by five years of supervised release.

## C

Scurry and his co-defendants appealed the district court's denial of their motions to suppress. Those appeals were consolidated in *United States v. Scurry*, No. 12-3104 (D.C. Cir).

Initially, Mary Davis was Scurry's attorney for the direct appeal. But Scurry soon asked for Mary Davis to be removed as counsel. Motion, *Scurry I*, No. 12-3104 (D.C. Cir. March 27, 2013), ECF No. 1427990. Scurry said that Mary Davis had a conflict of interest because she coerced him into pleading guilty and because she was married to trial counsel, Christopher Davis, against whom Scurry also planned to file an ineffective assistance of counsel claim. *Id.* at 4. A few days later, Mary Davis filed a motion to withdraw as Scurry's counsel. Motion, *Scurry I*, No. 12-3104 (D.C. Cir. March 29, 2013), ECF No. 1428070. This court granted both motions and directed that new counsel be appointed for Scurry. Per Curiam Order, *Scurry I*, No. 12-3104 (D.C. Cir. July 25, 2013), ECF No. 1448381.

6

This court subsequently reversed the district court's denial of motions to suppress evidence from the wiretaps of Hudson's and Johnson's phones. *Scurry I*, 821 F.3d at 5. We did so on the ground that the federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, requires that an order approving a wiretap include, among other things, "the identity of the high-level Justice Department official who approved the application[.]" *Id.* at 7 (citing 18 U.S.C. § 2518(4)(d)). Because the Hudson and Johnson orders plainly did not include the name of that official, the court held that the wiretap orders were invalid on their face. *See id.* at 8–12. That holding required suppression of the evidence obtained directly or derived from the Hudson and Johnson wiretaps. *See id.* at 13–14. This court then affirmed the remainder of the district court's rulings, including the denial of Scurry's own motion to suppress. *See id.* at 5, 16.

**D**

On remand, the government determined that evidence from the Hudson wiretap had led to the Savoy wiretap, which in turn had led to evidence relevant to Brown and to the Johnson wiretap. As a result, the government moved to dismiss the charges against Hudson, Savoy, Brown, and Johnson. That meant that, of the five original co-defendants in this case, only Scurry remained, without any benefit from the suppression decisions.

Scurry then filed a *pro se* motion to dismiss his indictment. While monitoring the electronic docket, Mary Davis noticed Scurry's filing. She then, on her own initiative, reached out to Scurry and offered to supplement his motion. Oral Arg. Tr. 11:3–20. Although Mary Davis had withdrawn from Scurry's direct appeal because of a conflict of interest—including Scurry's allegation that she had coerced him into pleading

guilty—she did not obtain a waiver from Scurry of that conflict before offering to represent him. Oral Arg. Tr. 11:21–12:13, 13:11–16; *see* A.B.A. MODEL R. PROF'L CONDUCT 1.7(a)(2), (b)(4) (2016) (requiring "informed consent, confirmed in writing" from client when "there is a significant risk that the representation of one or more clients will be materially limited * * * by a personal interest of the lawyer"); *see also National Treasury Emps. Union v. United States Dep't of Treasury*, 656 F.2d 848, 851 (D.C. Cir. 1981) (giving deference to the American Bar Association rules of conduct). Nor did Davis advise Scurry that the common and likely only legally viable way to challenge his conviction and sentence at this procedural stage would be to press an ineffective assistance of counsel claim against herself and/or her husband. *See* Oral Arg. Tr. 15:5–25, 16:1–9.

After Mary Davis's contact, Scurry filed a *pro se* motion asking the district court to re-appoint Mary and Christopher Davis to represent him because they had "indicated that they may supplement [his] motion." Motion at 1, *Savoy*, No. 10-cr-00310 (D.D.C. Dec. 19, 2016), ECF No. 384. The district court granted that motion, appointing them both under the Criminal Justice Act, 18 U.S.C. § 3006A. As relevant here, the Criminal Justice Act authorizes federal courts to appoint counsel for indigent parties in post-conviction proceedings when it is in the "interests of justice" to do so. *Id.* § 3006A(a)(2)(B).

Three months later, Mary and Christopher Davis filed a motion under 28 U.S.C. § 2255 to vacate Scurry's plea on the ground that it was not voluntarily or intelligently entered into because Scurry was "induced" to plead guilty by evidence collected from the wiretaps of his co-defendants' phones, which had since been ruled inadmissible. On August 22, 2018, the district court denied that motion, along with Scurry's

motion to dismiss his indictment, ruling that Scurry's plea was valid because he had understood the charges against him, and "the mere fact that evidence was suppressed as to others does not render his plea involuntary." *United States v. Scurry*, 318 F. Supp. 3d 365, 369 (D.D.C. 2018).

**E**

Scurry filed a timely *pro se* notice of appeal from the denial of his Section 2255 motion. On December 10, 2019, this court granted Scurry's motion for a certificate of appealability and referred the case to the Office of the Federal Public Defender for representation or selection of counsel from the Criminal Justice Act panel. Two weeks later, the court appointed Mary Davis as counsel for the appeal under the Criminal Justice Act. *See* U.S. Court of Appeals for the District of Columbia Circuit Plan to Implement the Criminal Justice Act of 1964 (June 2007).

**II**

The district court had jurisdiction over Scurry's motion under 28 U.S.C. § 2255. Because this court issued a certificate of appealability, we have jurisdiction over the appeal under 28 U.S.C. § 2253.

We review the district court's legal conclusions *de novo*. *United States v. Caso*, 723 F.3d 215, 219 (D.C. Cir. 2013). Determinations regarding appointment of counsel in the interests of justice under the Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B), are reviewed for an abuse of discretion. *See Wiseman v. Wachendorf*, 984 F.3d 649, 655 (8th Cir. 2021).

### III

Scurry challenges the voluntary and intelligent nature of his plea. At the time of the plea, Scurry believed that the wiretaps of his co-defendants' telephones supplied the critical evidence that he had participated in a conspiracy to distribute, or possess with intent to distribute, at least 280 grams of crack cocaine. He argues that his plea was neither voluntary nor intelligent because, when he entered the plea, he did not understand that the evidence might not have been admissible against him since the wiretaps were facially invalid. In other words, Scurry argues that he "did not understand the law in relation to the facts of this case[.]" Scurry Reply Br. 6.

Scurry's argument requires him to show first that, under the wiretap statute, he qualifies as an aggrieved person who can object to the government's use of evidence from the wiretaps of others' phones. *See* 18 U.S.C. § 2518(10)(a). Second, his evidentiary challenge must support a legally viable objection to the voluntary and intelligent nature of his plea. Even assuming that Scurry is an aggrieved person within the meaning of the wiretap statute who could challenge the wiretaps of his (former) co-defendants, his challenge to the voluntariness of his plea, as presently formulated, is squarely foreclosed by precedent.

### A

It is well settled that "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *United States v. Broce*, 488 U.S. 563, 574 (1989) (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)); *see also, e.g., Class v. United States*, 138 S. Ct. 798, 805 (2018); *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Parker v. North Carolina*, 397 U.S. 790,

796–798 (1970); *McMann v. Richardson*, 397 U.S. 759, 770–771 (1970); *Brady v. United States*, 397 U.S. 742, 757 (1970); *In re Sealed Case*, 936 F.3d 582, 587 (D.C. Cir. 2019).

That case law closes the door on Scurry's challenge to his plea based on the inadmissibility of wiretap evidence. For example, in *McMann*, the petitioners argued that their guilty pleas were involuntary because the pleas had been induced by unlawfully obtained evidence—in that case, coerced confessions. *See* 397 U.S. at 762–763. The Supreme Court gave that argument no harbor. The Court explained that a "later petition for collateral relief asserting that a coerced confession induced [a defendant's] plea" amounts "at most [to] a claim that the admissibility of his confession was mistakenly assessed and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act." *Id.* at 769 (emphasis omitted). That is insufficient to overturn a conviction. *Id.* As long as counsel's advice to take the plea rather than gamble on an evidentiary suppression issue was "reasonably competent," the plea is "not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession." *Id.* at 770.

So too here. Just as the *McMann* petitioners argued that their guilty pleas had been induced by inadmissible evidence (coerced confessions), Scurry argues that his plea was induced by inadmissible wiretap evidence. But by pleading guilty, Scurry specifically waived any challenge to the government's evidence other than his expressly reserved challenge to the district court's denial of his own motion to suppress evidence from the wiretap on his telephone. *See* Plea Tr. 8:17–22; 9:2–7, 12–13; J.A. 147–148. So Scurry's "guilty plea result[ed] in the * * * loss of any meaningful opportunity he might otherwise have had to challenge the inadmissibility of [other]

evidence obtained in violation of" law. *Haring v. Prosise*, 462 U.S. 306, 320 (1983).

Scurry argues that *McMann* is different because the petitioners there knew that their confessions had been coerced, while he did not know, until *Scurry I*, that the evidence from his co-defendants' phones would be suppressed. That argument makes little sense. While the *McMann* petitioners may have known the factual circumstances of their confessions, they did not know at the time of their pleas whether their confessions would meet the legal definition of coercion and would be suppressed. Similarly, Scurry did not understand the legal status of the other individuals' wiretaps at the time of his plea. Fighting those legal evidentiary disputes—and the risk of losing that battle—is part of what a defendant forgoes when pleading guilty. That is why the Supreme Court rejected an argument just like Scurry's. *See Tollett*, 411 U.S. at 265–266 (holding that guilty plea foreclosed inquiry into discrimination in grand jury selection, even though defendant and his attorney were unaware of such discrimination before the defendant entered his guilty plea). Simply put, wrongly judging the admissibility of evidence does not render a plea involuntary as long as counsel provided reasonably competent advice in making that decision. *See McMann*, 397 U.S. at 769–770; *see also Brady*, 397 U.S. at 757 (defendant cannot withdraw plea where "his calculus misapprehended the quality of the State's case"). As has been said time and again, "a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Brady*, 397 U.S. at 757.

12

**B**

That, however, is not the end of the story in this case. Central to *McMann*, *Tollett*, *Brady*, and the other governing precedent is the foundational presumption that the decision to plead guilty rested on competent legal advice from counsel. *See Tollett*, 411 U.S. at 266–267; *McMann*, 397 U.S. at 770–771; *Brady*, 397 U.S. at 756–758. So while reasonable but mistaken evidentiary judgments themselves do not render a plea involuntary, ineffective assistance of counsel in evaluating the strength of the government's case, the risks of going to trial, or the consequences of pleading guilty can invalidate a plea. The Supreme Court in *McMann* was quite clear that what could render a guilty plea involuntary is not the claim of evidentiary misjudgment advanced by Scurry's counsel here, but instead is a claim of ineffective assistance of counsel in entering the plea. *See McMann*, 397 U.S. at 770–771. For a counseled defendant informed of the charges against him, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann*, 397 U.S. at 771). As such, a counseled defendant like Scurry "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" failed the constitutional requirement of effective counsel. *See id.* at 57–58 (quoting *Tollett*, 411 U.S. at 267); *see generally Strickland v. Washington*, 466 U.S. 668 (1984).[1]

---

[1] There are a few other narrow exceptions to the general bar on collateral attacks to a counseled plea. They include, for example, (i) when a defendant was "misinformed as to the true nature of the charge against him[,]" *Bousley v. United States*, 523 U.S. 614, 619 (1998), which often takes the form of a challenge under Federal Rule

Therein lies the rub in this case. Mary Davis, after withdrawing from the direct appeal because Scurry raised a conflict of interest based on her and her husband's asserted ineffectiveness, affirmatively reached out to Scurry to get appointed to assist him with his collateral challenge to his plea. *See* Oral Arg. Tr. 11:3–20; Motion, *Scurry I*, No. 12-3104 (D.C. Cir. March 27, 2013), ECF No. 1427990; Motion, *Scurry I*, No. 12-3104 (D.C. Cir. March 29, 2013), ECF No. 1428070. Yet, under controlling Supreme Court precedent, the only legally viable avenue for challenging the plea apparent on this record would have been for Davis to argue that her own and/or her husband's representation of Scurry in the decision to plead guilty was constitutionally ineffective. That Davis chose to pursue a challenge to Scurry's guilty plea that was plainly foreclosed by precedent rather than the only potentially viable legal avenue recognized by case law—an ineffective assistance of counsel claim against herself and her spouse—presents an untenable direct and plain conflict of interest between attorney and client.

Nor did Davis, when she re-inserted herself into Scurry's case to file this Section 2255 motion, obtain any waiver of the conflict—even assuming a conflict like this is waivable at all. *See* Oral Arg. Tr. 12:11–17; 13:11–16. Davis, in fact, did not recall broaching the conflict issue at all with Scurry; she did

---

of Criminal Procedure 11; (ii) when the government lacked the power to constitutionally prosecute the defendant because the defendant could not lawfully have been "haled into court at all," the so-called *Blackledge-Menna* doctrine, *Class*, 138 S. Ct. at 803 (quoting *Blackledge v. Perry*, 417 U.S. 21, 30–31 (1974)); *In re Sealed Case*, 936 F.3d at 587; and (iii) when a defendant challenges the subject-matter jurisdiction of the district court, *United States v. Cotton*, 535 U.S. 625, 630 (2002); *United States v. Delgado-Garcia*, 374 F.3d 1337, 1341 (D.C. Cir. 2004). None of those arguments has been raised here.

not even recall the conflict. Oral Arg. Tr. 12:3–4, 13:1–3, 11–16. Davis also apparently never advised Scurry that, to be legally viable, a challenge to the voluntary and intelligent nature of his plea based on the suppression of the other wiretaps would require him to level an ineffective assistance of counsel claim aimed at her and/or her husband. *See* Oral Arg. Tr. 15:24–25; 16:1–9. So the conflict of interest persisted throughout and permeated Mary Davis's representation of Scurry in these Section 2255 proceedings.

While we make no decision about the ultimate merits of a claim that Scurry received constitutionally ineffective assistance in entering his plea, the record establishes that pressing such a claim was sufficiently plausible so as not to foreclose Scurry raising the argument as a potential avenue of relief in his Section 2255 petition. *See Christeson v. Roper*, 574 U.S. 373, 380 (2015) (per curiam) (finding that, despite a "host of procedural obstacles," habeas petition was not futile). Scurry had already claimed at the outset of his direct appeal that Mary Davis coerced him into agreeing to the plea. Motion at 3–5, *Scurry I*, No. 12-3104 (D.C. Cir. March 27, 2013), ECF No. 1427990. And Davis's answers at oral argument were not inconsistent with that claim. She stated that she was covering for her husband by representing and counseling Scurry as he made the final decision to plead guilty. Oral Arg. Tr. 10:15–16; 26:14–18. Although appearing as counsel for the first day of trial, she admitted that she had not reviewed important evidence in the case. *See* Oral Arg. Tr. 26:8–21. And yet she still represented Scurry regarding the plea. *See* Oral Arg. Tr. 26:8–18. She further admitted that she did not even know whether Scurry's communications were captured by the wiretaps of his co-defendants' phones, a fact of potentially critical significance to his ability to challenge those wiretaps. *See* Oral Arg. Tr. 26:8–21; 18 U.S.C. §§ 2510(11), 2518(10)(a) (providing that "aggrieved

person[s]," including those who were a party to any intercepted communication, can move to suppress the contents of that communication). Scurry's plea also did not preserve his ability to challenge the district court's failure to suppress his co-defendants' wiretap evidence or condition his plea on the result of any challenge to their suppression orders, as some of his former co-defendants' plea agreements did.

Given all of those facts, the record incontrovertibly establishes that the conflict of interest impaired Davis's representation of Scurry in the district court and in this court. Davis brought a challenge to Scurry's plea that is squarely foreclosed by precedent and omitted a plausible ineffectiveness claim that courts have allowed in precisely this context. Still worse, by affirmatively intervening in Scurry's collateral proceedings despite the conflict and not pressing the ineffective assistance claim, Davis seemingly "ma[d]e a choice advancing [her] own interest at the expense of [her] client's." *United States v. Taylor*, 139 F.3d 924, 930 (D.C. Cir. 1998).

To be sure, there generally is no *constitutional* right to effective counsel in collateral proceedings. *See, e.g.*, *Garza v. Idaho*, 139 S. Ct. 738, 749 (2019).[2] But the Criminal Justice

---

[2] The Supreme Court has left open the possibility that an individual could have a constitutional right to effective counsel in collateral proceedings when those proceedings provide the first opportunity to raise a claim of ineffective assistance of trial counsel. *See Martinez v. Ryan*, 566 U.S. 1, 8 (2012) (describing *Coleman v. Thompson*, 501 U.S. 722, 755 (1991)). Relatedly, the Court has held that the ineffective assistance of post-conviction counsel can serve as "cause" to overcome the procedural default of an ineffective assistance of trial counsel claim, where the individual did not have a meaningful opportunity to bring his claim alleging ineffective assistance at trial on direct appeal. *See Trevino v. Thaler*, 569 U.S. 413, 429 (2013); *Martinez*, 566 U.S. at 10, 17.

Act *statutorily* authorizes courts to appoint counsel for financially eligible individuals like Scurry who are seeking relief under Section 2255 when "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). The "interests of justice" inquiry is "peculiarly context-specific," and we will overturn a district court's decision about the appointment of counsel under Section 3006A(a)(2)(B) only for an abuse of discretion. *See Martel v. Clair*, 565 U.S. 648, 663 (2012); *see also id.* at 652 (applying the same "interests of justice" standard from the Criminal Justice Act to substitutions of counsel for capital defendants under 18 U.S.C. § 3599(e)).

The appointment of counsel despite an "obvious conflict of interest" constitutes an abuse of discretion under the "interests of justice" standard. *Cf. Christeson*, 574 U.S. at 379 (in the context of substitution of counsel under Section 3599(e)); *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (explaining that an attorney is ineffective in violation of the Sixth Amendment where "an actual conflict of interest adversely affect[s]" her performance). In *Christeson*, the Supreme Court overturned the lower courts' denial of a motion to substitute post-conviction counsel under the "interests of justice" standard because their client's "only hope" was to pursue a claim "premised on [appointed counsel's] own malfeasance[.]" 574 U.S. at 375. The Supreme Court explained that "[a]dvancing such a claim would have required [counsel] to denigrate their own performance," yet they "cannot reasonably be expected to make such an argument, which threatens their professional reputation and livelihood." *Id.* at 378. The Supreme Court accordingly reversed and remanded for the substitution of conflict-free counsel. *See id.* at 379–381.

Here too, the appointment of Mary Davis by the district court to represent Scurry when she labored under an undeniable

and significant conflict of interest was an improper exercise of the appointment power under the Criminal Justice Act and, therefore, legal error. A "significant conflict of interest" arises when an attorney's "interest in avoiding damage to [her] own reputation" is "at odds with [her client's] strongest argument." *Maples v. Thomas*, 565 U.S. 266, 285–286 n.8 (2012). That is this case exactly. Mary Davis's conflict of interest pitted her professional interests and reputation against her client's legal interest in the advancement of his only viable challenge to the guilty plea—one based on the Davises' own alleged ineffectiveness in advising him to take the plea and in setting its terms. This plain and material conflict of interest made the appointment of Mary Davis for the Section 2255 petition and appeal legal error because we "certainly cannot reasonably expect an attorney to vigorously attack [her] own prior representation of a client as ineffective." *United States v. Barnes*, 662 F.2d 777, 782 (D.C. Cir. 1980); *see also Massaro v. United States*, 538 U.S. 500, 502–503 (2003) (noting that "an attorney who handles both trial and appeal is unlikely to raise an ineffective assistance claim against himself").

To be fair, that legal error is as much this court's as the district court's because we appointed Mary Davis to handle this appeal. Clerk's Order at 1, *United States v. Scurry* (*Scurry II*), No. 18-3067 (D.C. Cir. Dec. 23, 2019), ECF No. 1821432; *see also* Per Curiam Order at 1, *Scurry II*, No. 18-3067 (D.C. Cir. Dec. 10, 2019), ECF No. 1819648. That we and the district court were ignorant of the conflict at the time of the appointment does not absolve us of responsibility to correct the error once it is discovered. It can never be appropriate under the Criminal Justice Act—it can never be in the "interests of justice"—to appoint counsel who labors under an unwaived and material conflict of interest. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) (A "court would

necessarily abuse its discretion if it based its ruling on an erroneous view of the law[.]"). Mary Davis's appointment was therefore impermissible under the Criminal Justice Act.

Now that we have discovered this problem, this court may raise the issue *sua sponte*. *See Wood v. Georgia*, 450 U.S. 261, 272 (1981) (raising possible conflict of interest that was neither briefed nor argued); *see also Barnes*, 662 F.2d at 783 ("It was the responsibility of the court and the government to take initiative to protect appellant's right to counsel."); *cf. Massaro*, 538 U.S. at 508 ("There may be instances * * * when obvious deficiencies in representation will be addressed by an appellate court *sua sponte*" on direct appeal rather than in a Section 2255 motion.). "Although the provision of counsel in [S]ection 2255 proceedings may be discretionary, '[h]aving thus determined that counsel should have been appointed, the [d]istrict [c]ourt'" and this court "'should have taken steps to insure effective representation.'" *Barnes*, 662 F.2d at 781 (second alteration in original) (quoting *McCartney v. United States*, 343 F.2d 471, 472 (9th Cir. 1965)).

We now take that necessary step and reverse and remand to the district court for the appointment of conflict-free counsel to represent Scurry in his Section 2255 proceedings. *See Barnes*, 662 F.2d at 782–783 (remanding for hearing on Section 2255 motion with new counsel after old counsel had failed to "vigorously attack" his prior representation as ineffective); *see also United States v. Ortiz-Graulau*, 526 F.3d 16, 21 (1st Cir. 2008) (instructing district court, in the event that the defendant chose to pursue a Section 2255 petition, to appoint conflict-free counsel for those proceedings). Whatever the scope of the courts' discretion in appointing counsel under the Criminal Justice Act, it cannot extend to the appointment of an attorney whose interests are antagonistic to those of the client.

19

**IV**

For all of those reasons, we hold that the appointment of Mary Davis was not in the interests of justice under the Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B), given her unwaived and material conflict of interest. The district court's judgment is reversed, and the case is remanded for the appointment of conflict-free counsel to represent Scurry in his Section 2255 proceedings.

*So ordered.*